## S16A1107. RAGAN v. THE STATE.
(792 SE2d 342)

HUNSTEIN, Justice.

Appellant Lonnie Ragan was convicted of murder and related offenses in connection with the murder of Holly Hearn. Appellant now appeals his convictions, arguing that the trial court committed reversible error by failing to grant his motion for mistrial and by

admitting in-life photographs of the victim adduced by the State. Finding no reversible error, we affirm.[1]

Viewed in a light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Appellant, a convicted felon, went looking for his estranged wife and son. Initially, he encountered Bradley Acker at a local gas station; Appellant, who was familiar with Acker, threatened Acker with a shotgun in an attempt to elicit information on the whereabouts of his estranged family. Almost immediately thereafter, Appellant, still armed with a shotgun, went to the home of Ryan and Holly Hearn, still searching for his wife and child. Appellant encountered Holly in the front yard and pointed the shotgun at her; responding to Holly's screams, Ryan confronted Appellant, and Holly ran into the residence. Appellant forced Ryan to the ground, and Ryan's four-year-old son, Wesson, attempted to protect his father. Appellant, still looking for his son, instructed Ryan to kick in the side door of the residence, but Ryan was unsuccessful. Holly subsequently came out of the residence armed with a revolver. Appellant fired his weapon twice, killing Holly and injuring Ryan. After the shooting, Appellant called 911 and admitted to shooting Holly; he then left the scene. Though Appellant claimed at trial that he acted in self-defense — and suffered from a mental disorder — the jury also heard testimony that Holly carried the revolver by her side and never aimed it at Appellant.

1. Though Appellant has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a

[1] In May 2012, a Muscogee County grand jury returned a fourteen-count indictment charging Appellant Lonnie Ragan as follows: malice murder; felony murder; aggravated assault (Holly Hearn); possession of a firearm during the commission of a felony (murder); aggravated assault (Ryan Hearn); aggravated assault (Wesson Hearn); aggravated assault (Bradley Acker); criminal attempt to commit a felony (kidnapping); possession of a firearm during the commission of a felony (criminal attempt — kidnapping); possession of a firearm by a convicted felon; unlawful handling of explosive devices (three counts); and possession of an explosive device by a convicted felon. Following a trial in March 2014, a jury found Appellant guilty of murder, felony murder, aggravated assault against Holly Hearn, Ryan Hearn, and Wesson Hearn, possession of a firearm during the commission of a felony (murder), and possession of a firearm by a convicted felon; Appellant was acquitted on the remaining charges. The trial court sentenced Appellant to life imprisonment without the possibility of parole for malice murder; the trial court also sentenced Appellant to twenty years for aggravated assault (Ryan Hearn), twenty years for aggravated assault (Wesson Hearn), five years for possession of a firearm during the commission of a felony (murder), and five years for possession of a firearm by a convicted felon, for a total of fifty years that were to be served consecutively. The remaining counts were either vacated by operation of law or properly merged. Appellant filed a motion for new trial in April 2014, which was amended in October 2015. The trial court conducted a hearing on the motion and, in December 2015, denied the motion. Ragan filed his notice of appeal on December 22, 2015; this appeal was docketed to the April 2016 term of this Court and was thereafter submitted for decisions on the briefs.

reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. At trial, the defense presented a single witness, Dr. Catherine Boyer, a clinical and forensic psychologist, who testified regarding Appellant's preexisting mental health problems and how his mental health could have influenced his perception of the events at the time of the murder. Though she did not testify that Appellant was insane or incompetent, she did testify that Appellant experiences high anxiety, panic attacks, depression, racing thoughts, and "a chronic sense of being victimized, of expecting harm in situations where that might not objectively be present." Dr. Boyer opined that these symptoms — in combination with his post-traumatic stress disorder and poor emotional control — impair Appellant's ability to sense whether he was in a safe environment, inflate his sense of danger during conflict, and cause Appellant to perceive his surroundings to be more threatening than they are in reality. During cross-examination, while the State was going through Dr. Boyer's report regarding Appellant's conduct after the shooting, the following exchange occurred:

Q. Mr. Ragan was able to contact 911, your words?
A. Yes.
Q. And engage in coherent communication about what had transpired, your words?
A. Yes.
Q. Dispose of his weapon, your words?
A. Yes.
Q. And take steps towards turning himself in, is that correct?
A. Yes.
Q. Additionally, he reportedly requested an attorney before making any statements?

Following the State's last question, Appellant moved for a mistrial outside the presence of the jury, arguing that the State had commented on his post-arrest invocation of counsel and right to remain silent. The trial court found that the unanswered question, standing alone, did not draw the jury's attention to the question; the trial court also instructed the jury to disregard the State's question. On appeal, Appellant maintains that he was entitled to a mistrial. We disagree.

"In *Doyle v. Ohio*, [426 U. S. 610 (96 SCt 2240, 49 LE2d 91) (1976)], the U. S. Supreme Court ruled that it is a violation of the defendant's due process rights for the State to comment on the defendant's invocation of his right to remain silent." *Brewer v. Hall*,

278 Ga. 511, 513 (3) (603 SE2d 244) (2004). The Supreme Court in *Wainwright v. Greenfield*, 474 U. S. 284 (106 SCt 634, 88 LE2d 623) (1986), later extended this protection to invocations of the right to counsel. See *United States v. Reeves*, 742 F3d 487 (III) (C) (11th Cir. 2014). However, such a "violation is harmless if the error had no 'substantial and injurious effect or influence in determining the jury's verdict.' " (Citations omitted.) *United States v. Miller*, 255 F3d 1282, 1285 (II) (A) (11th Cir. 2001). See also *Brewer*, 278 Ga. at 513 ("Because this error involves the defendant's constitutional rights, the defendant would be entitled to a new trial unless the error is harmless beyond a reasonable doubt.").

"The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of defendant's guilt." *Brewer*, 278 Ga. at 513. Any error is "especially harmless" when the prosecutor makes no further attempt to highlight that the defendant exercised his rights. (Punctuation omitted.) *Reeves*, 742 F3d at 504 (quoting *Miller*, 255 F3d at 1286). "Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial." *Ottis v. State*, 271 Ga. 200, 201 (3) (517 SE2d 525) (1999).

Contrary to Appellant's assertions, it is not clear that the jury would have inferred from the question itself that Appellant did, in fact, request an attorney. The prosecutor's question, though highly improper, suggested only that Appellant may have, or "reportedly," requested an attorney, and there was no response from Dr. Boyer. To the extent that the jury could have inferred that Appellant had requested an attorney, we cannot say that such an inference was particularly prejudicial or, as Appellant asserts, detrimental to his defense. See *Cape v. State*, 246 Ga. 520, 523 (II) (272 SE2d 487) (1980) ("[T]he evidence of the defendant's election to remain silent must point directly at the substance of the defendant's defense or otherwise substantially prejudice the defendant in the eyes of the jury."). The crux of Dr. Boyer's testimony was that Appellant suffered from an inability to gauge threats during conflicts and charged circumstances. As evident in the above-quoted exchange between the State and Dr. Boyer, any request by Appellant for an attorney was made well after he was removed from the situation which elicited the heightened response and, thus, had no bearing on his conduct at the time of the murder. Simply put, the gravamen of Appellant's defense was not an ongoing incompetency, insanity, or intellectual disability, but, instead, was limited to situations in which Appellant perceived

that he was threatened. In light of this limited defense, the fact that he requested an attorney at a later time did not undermine his theory at trial.

Our conclusion that this error is harmless is bolstered by the overwhelming evidence of Appellant's guilt, the curative instruction provided by the trial court, and the fact that Appellant's "reported" request for an attorney was never again mentioned. The trial court exercised sound discretion here, and Appellant is not entitled to relief.

3. Appellant next argues that the trial court erred in admitting five photographs of the victim while in life and erred in denying his subsequent motion for mistrial after, he says, the photographs elicited an emotional response from the jury. We address each argument in turn.

Because Appellant was tried after January 1, 2013, we utilize Georgia's new Evidence Code to evaluate the admissibility of the photographs. Pursuant to OCGA § 24-4-402, "[a]ll relevant evidence shall be admissible[.]" To evaluate relevancy, this Court relies on OCGA § 24-4-401, which defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded under OCGA § 24-4-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. See also *State v. Jones*, 297 Ga. 156, 158 (1) (773 SE2d 170) (2015). "The 'major function' of Rule 403 is to 'exclud(e) matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.' " (Citations and punctuation omitted.) *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016).

As part of its case for murder, the State was required to prove that Appellant caused "the death of another human being," OCGA § 16-5-1, and we have previously held — under our old rules of evidence — that a photograph of a victim in life may be relevant "to prove an element of the corpus delicti, that is, that the person alleged to have been killed is actually dead." (Citation and punctuation omitted.) *Sizemore v. State*, 251 Ga. 867, 868 (2) (310 SE2d 227) (1984). This Court has stressed, however, that certain steps must be taken to ensure that the tenuous probative value of a victim-while-in-life photograph is not subsumed by the substantial prejudicial impact. See, e.g., *Boyd v. State*, 284 Ga. 46, 48 (2) (663 SE2d 218) (2008) (emphasizing "that every effort should be made to proffer a photograph of the victim alone"); *Flowers v. State*, 275 Ga. 592, 594 (4) (571

SE2d 381) (2002) (recognizing that "the better practice is to not permit a victim's family member to identify the victim where other[,] nonrelated witnesses are able to do so" (citation and punctuation omitted)). Here, the State failed to heed our caution and adduced *five* photographs of the victim — depicting her alone and with her children — using her surviving husband (a victim himself) to identify the photographs. With no serious question as to the victim's existence or identity, any probative value of the photographs was outweighed by the cumulative prejudicial effect therefrom, and the trial court erred when it admitted the photographs. See *Hood*, 299 Ga. at 105 (trial court abused its discretion in admitting evidence where "there was virtually nothing on the probative value side of the Rule 403 balance[ ] and something not insubstantial on the prejudice side").

Nevertheless, any error here is harmless because we cannot say that there is a reasonable likelihood that the defendant's substantial rights were affected by the wrongful admission of these photographs such that reversal would be warranted. See *United States v. Sellers*, 906 F2d 597, 601 (II) (A) (11th Cir. 1990) ("Even where an abuse of discretion is shown, non-constitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected."). As discussed above, the evidence of Appellant's guilt was strong, and the jury was well aware — independent of the photographs — that Holly Hearn was both a wife and a mother. See *United States v. Grandison*, 780 F2d 425, 429-430 (4th Cir. 1985), vacated on other grounds, 479 U. S. 1076 (107 SCt 1270, 94 LE2d 131) (1987) ("Pretty pictures of enticing domestic scenes and endearing remarks about one of the decedents were not likely to influence a jury's determination in the case before us.").

Finally, Appellant contends that he was entitled to a mistrial after the photographs caused members of the audience to cry and elicited an "emotional display" from the jury. We disagree.

As an initial matter, Appellant's motion for a mistrial was untimely. "A motion for mistrial must be promptly made as soon as the party is aware of the matter giving rise to the motion." *Harmon v. State*, 224 Ga. App. 890, 892 (1) (482 SE2d 730) (1997). The record indicates that it was only after the State had concluded its direct examination of Ryan Hearn — during which the victim-while-in-life photographs were admitted — that Appellant moved for a mistrial. The timing of the motion is concerning here because, as the State points out, a number of *other* photographs were published during Hearn's testimony, including graphic crime-scene photographs.

Further, "[a] trial court has broad discretion in deciding whether to grant a mistrial, and the grant of a mistrial is required only if 'it is apparent that a mistrial is essential to the preservation of the right

to a fair trial.'" (Citations omitted.) *Kirkland v. State*, 334 Ga. App. 26, 35 (5) (b) (778 SE2d 42) (2015). While Appellant's trial counsel noted on the record that members of the audience were "crying" and that there was an "emotional response" from the jury, the record is silent on the nature and extent of the "emotional response" described by trial counsel. Trial courts are vested with great discretion to grant or deny mistrials because they are in the best possible position to determine whether one is warranted; nothing in the record suggests that the trial court abused its discretion here. See *Forney v. State*, 255 Ga. 316, 318 (3) (338 SE2d 252) (1986) (recognizing that emotions are neither unreasonable nor unexpected during murder trial and that "[d]emonstrations and outbursts which occur during the course of a trial are matters for the trial court's discretion").

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 2016.

*Katherine L. Dodd*, for appellant.

*Julia F. Slater, District Attorney, Robert B. Bickerstaff II, Senior Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew Min-soo Youn, Assistant Attorney General*, for appellee.