302 Ga. 704
FINAL COPY

S17A1539.  BOZZIE v. THE STATE.

PETERSON, Justice.

Frank Scott Bozzie was convicted of malice murder and other crimes in connection with the death of Richard Morgan.[1] Bozzie appeals and argues that the evidence was insufficient to support his malice murder conviction, the trial court made numerous evidentiary errors, he should be granted a new trial due

---

[1] The crimes occurred on June 10, 2013. On August 29, 2013, a Whitfield County grand jury indicted Bozzie for malice murder (Count 1), two counts of felony murder (Counts 2 and 3), ten counts of aggravated assault (Counts 4-13), criminal damage to property in the first degree (Count 14), criminal damage to property in the second degree (Count 15), and family violence battery (Count 16). At a jury trial held in June 2014, the trial court entered a directed verdict of acquittal on criminal damage to property in the second degree (Count 15). The jury acquitted Bozzie on two counts of aggravated assault (Counts 12 and 13), but found him guilty on all other counts. The trial court sentenced Bozzie as follows: life without parole for Count 1; 20-year sentences for Counts 6 and 8 to run concurrently with each other and consecutive to Count 1; a 20-year sentence on Count 10 to run concurrent with Count 1; a 10-year sentence on Count 14 to run consecutive to Count 1 and concurrent with Counts 6 and 8; and a 12-month sentence on Count 16 to run consecutive to Count 1 and concurrent with Counts 6, 8, and 14. The court merged the remaining counts, although it should have vacated the felony murder counts (Counts 2 and 3), see Malcolm v. State, 263 Ga. 369, 372 (4) (434 SE2d 479) (1993). Bozzie filed a timely motion for new trial, which he subsequently amended. Following a hearing, the trial court denied the motion on December 7, 2016. Bozzie filed a timely notice of appeal, and the case was docketed to this Court for the August 2017 term and orally argued on August 15, 2017.

to alleged juror misconduct, he received ineffective assistance of trial counsel, and the trial court erred in refusing to secure his attendance for the motion for new trial hearing. Because none of these claims is meritorious, we affirm Bozzie's convictions.

Viewed in the light most favorable to the verdict, the trial evidence showed the following. On a night in June 2013, Jennifer Verner was with Morgan at a bar when she met and talked to Bozzie. Within days, Verner and Bozzie began a romantic relationship, and she soon agreed to move in with him. Verner quickly decided to move out, however, finding Bozzie controlling. Not wanting to reveal her true plans to Bozzie, Verner asked him for a ride to her parents' house, telling Bozzie that she was going out with her cousin. Verner actually planned to meet Morgan and Richard Holbrook, a man Verner had previously dated intermittently. Bozzie became angry when Verner asked him for a ride, but he ultimately agreed.

Bozzie drove Verner to her parents' house and initially refused to leave until Verner's cousin arrived. Verner tried to convince Bozzie to leave and began to tell him that she didn't think their relationship was working, but

stopped when she sensed he was getting angry. After Bozzie left, Verner called Morgan and Holbrook, who picked her up and took her to Morgan's house.

Bozzie returned to Verner's parents' house later that night, expecting to pick up Verner. He waited for Verner until the following morning, attempting to reach her by phone and exchanging several text messages with her. Verner told Bozzie that she didn't want to be with him and asked him to pack up her things. Bozzie begged her to return and said that he loved her and that he was hurting. Seeking to quell his anger, Verner replied that she loved him, she would never leave him, and she would see him soon.

Bozzie drove around looking for Verner after he left her parents' house. Bozzie went to Morgan's residence, got into a physical altercation with Morgan, and learned from Morgan that Verner and Holbrook had gone to a nearby McDonald's. Bozzie drove to the restaurant and, when he saw Holbrook and Verner sitting in Morgan's van, rammed his truck into the driver's side door, hitting the side where Holbrook was sitting. Holbrook rushed to exit through the passenger's door because he thought Bozzie was going to ram the van again. Bozzie got out of his truck carrying a baseball bat and walked around the van. Verner, who was out of the van at this point, asked Bozzie to stop, but he struck

3

her in the mouth and moved toward Holbrook. Bozzie swung the baseball bat at Holbrook, struck him twice, and briefly followed Holbrook as Holbrook ran away. Bozzie then returned to the van and smashed a window. Bozzie told Verner to get in his truck and left in his vehicle when she refused.

Holbrook returned to the van once he saw Bozzie leave and drove Verner to Morgan's house. Standing on the driveway of Morgan's house, Verner and Holbrook told Morgan about their violent encounter with Bozzie. Morgan called 911. While Morgan was on the phone, Bozzie drove onto Morgan's driveway. Morgan asked Bozzie to leave and shook a bat at Bozzie when he got out of his truck. Bozzie returned to his truck and began revving the engine. Morgan started to run away, but Bozzie chased him down, hit him with his truck, and dragged him under his truck for about 32 feet before trees stopped the vehicle's movement.

Holbrook, who went across the street when Morgan called 911, immediately ran back to assist Morgan and noticed that the wheels of Bozzie's truck were still spinning. Holbrook grabbed the baseball bat that Morgan had dropped and tried to hit Bozzie through the window. Holbrook ran away when it appeared that Bozzie was reaching for a gun. Bozzie exited his truck, tried

4

unsuccessfully to open the front door of Morgan's house, and then fled on foot. Police arrived and attempted to lift the truck off Morgan, but were too late. Morgan died as a result of asphyxiation.

1. Bozzie argues that the evidence was insufficient to support his malice murder conviction, because the evidence does not show that he had the intent to kill Morgan. We disagree.

The crime of malice murder is committed when the evidence shows either an express or implied intent to commit an unlawful homicide. Kitchen v. State, 287 Ga. 833, 834 (700 SE2d 563) (2010); see also OCGA § 16-5-1 (a).

> This meaning of malice murder is consistent with the general rule that crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur.

Kitchen, 287 Ga. at 834 (citation and punctuation omitted). Thus, a specific intent to kill is express malice, whereas an intent to commit acts with such a reckless disregard for human life as to show "an abandoned and malignant

heart" amounts to implied malice. OCGA § 16-5-1 (b); see <u>Browder v. State</u>, 294 Ga. 188, 190 (1) (751 SE2d 354) (2013).

Here, the evidence was sufficient for the jury to find that Bozzie intended to strike Morgan with his vehicle, an act that was substantially certain to cause Morgan's death. Eyewitnesses testified that Bozzie revved the engine of his truck several times while Morgan was standing in front of it. Although Morgan tried to run away, Bozzie chased Morgan down, hit him with the truck, and then dragged him for 32 feet. Although Bozzie testified at trial that he simply lost control of his truck, the jury was free to reject Bozzie's version of events, especially where the evidence showed that Bozzie kept his foot on the gas pedal while dragging Morgan, even after his truck crashed into trees and could no longer move forward. See <u>Brannon v. State</u>, 266 Ga. 667, 668 (469 SE2d 676) (1996) (the jury determines witness credibility and is free to reject a defendant's testimony, including the denial of intent). The evidence was therefore sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Bozzie was guilty of malice murder, as well as the other crimes for which he was convicted. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Bozzie argues that the trial court erred in its admission of photographs of Morgan — an in-life photograph and numerous photographs of his dead body — and certain hearsay statements. As Bozzie concedes, no objection was made when this evidence was introduced at trial, so we review his claim only for plain error. See OCGA § 24-1-103 (d). To establish plain error,

> [Bozzie] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings.

Lupoe v. State, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016) (citation and punctuation omitted). To show that the error affected his substantial rights, Bozzie is required to show that error probably affected the outcome of his trial. See Jones v. State, 299 Ga. 40, 43 (2) (785 SE2d 886) (2016).

(a) Relying primarily on our opinion in Ragan v. State, 299 Ga. 828 (792 SE2d 342) (2016), Bozzie argues that the trial court erred in admitting a single photograph of Morgan with his wife and grandchildren because Morgan's existence or identity was not in question and the State failed to show, as a condition of admission, that it made every effort to proffer a photograph of the victim alone. The error in Ragan, however, was the admission of *five* in-life

7

photographs of the victim depicting her alone or with her children. Ragan, 299 Ga. at 833 (3) ("With no serious question as to the victim's existence or identity, any probative value of the photographs was outweighed by the *cumulative* prejudicial effect therefrom, and the trial court erred when it admitted the photographs." (emphasis supplied)). Here, only one in-life photograph was admitted.

But even if we were to assume that the probative value of *one* photograph was substantially outweighed by the danger of unfair prejudice and, thus, that the photograph's admission was erroneous, Ragan does not compel reversal of Bozzie's convictions. The error in Ragan was found to be harmless because the evidence of the defendant's guilt was strong, the jury was "well aware — independent of the photographs — that [the victim] was both a wife and a mother," and "[p]retty pictures of enticing domestic scenes . . . were not likely to influence a jury's determination in the case[.]" Ragan, 299 Ga. at 833 (3) (citation and punctuation omitted).

The test for nonconstitutional harmless error is similar to the determination of prejudice under plain error review, with the principal difference being the party that bears the burden of proof. See United States v.

8

<u>Olano</u>, 507 U. S. 725, 734 (113 SCt 1770, 123 LE2d 508) (1993); <u>United States v. Mathenia</u>, 409 F3d 1289, 1292 (11th Cir. 2005).[2] For nonconstitutional harmless error, the State has the burden to show that it was highly probable that the error did not contribute to the verdict. See <u>Rivera v. State</u>, 295 Ga. 380, 382 (761 SE2d 30) (2014); see also <u>Mathenia</u>, 409 F3d at 1292. But to establish plain error, a defendant has the burden of making "an affirmative showing that the error probably did affect the outcome below." <u>Shaw v. State</u>, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013) (citations and punctuation omitted). In both circumstances, we review whether the error prejudiced the outcome of the trial. See <u>Olano</u>, 507 U. S. at 734. Like <u>Ragan</u>, where we concluded that the admission of five photographs did not affect the outcome of the trial, the admission of one photograph here also did not affect the outcome of the trial given the strength of the evidence against Bozzie. Therefore, there was no plain error in admitting the photograph.

(b) Bozzie argues that the trial court erred in allowing the jury to see 15 photographs of the victim's dead body. Several photographs show the victim's

---

[2] Our plain error review of evidentiary rulings tracks the federal plain-error test set forth by the United States Supreme Court and the Eleventh Circuit. See <u>Gates v. State</u>, 298 Ga. 324, 326-327 (3) (781 SE2d 772) (2016).

body at the scene of the crime and the remaining photographs show the victim's body before the autopsy. A trial court generally does not abuse its discretion in admitting photographs of a murdered victim to establish the identity of the victim, the manner of death, or other elements of the crime. See United States v. De Parias, 805 F2d 1447, 1453-1454 (11th Cir. 1986), overruled on other grounds by United States v. Kaplan, 171 F3d 1351, 1357 (11th Cir. 1999). There was no error, plain or otherwise, in admitting the challenged photographs.

(c) Bozzie also claims that the court erred in admitting several hearsay statements introduced by Verner and by a police detective. The introduction of these statements was not plain error.

In the first set of statements, Verner testified without objection that, after returning from their violent encounter with Bozzie at McDonald's, Morgan said to Verner and Holbrook that Bozzie had been by the house earlier that morning. Even if these statements constituted hearsay, no harm resulted from their admission, as Bozzie testified at trial that he went to McDonald's after having a violent encounter with Morgan at Morgan's house. See United States v. Weinstein, 762 F2d 1522, 1535-1536 (11th Cir. 1985) (error in admitting hearsay may be harmless where the evidence is cumulative).

10

The second set of statements was made when a detective testified about Verner's statements to police at the crime scene. Verner's statements to the police were consistent with and cumulative of her trial testimony, and so any error in admitting her statements to the police was harmless.

3. Bozzie next argues that his convictions must be overturned due to the improper conduct of a juror who spoke to Holbrook's girlfriend. The incident occurred at the close of the first day of the trial, after Holbrook had testified, while Holbrook and his girlfriend were being escorted to the courthouse elevator by the State's chief investigator. The investigator quickly stopped the conversation once he realized the woman was a juror, and the incident was relayed to trial counsel and to the court. Trial counsel declined to make any motion or pursue the matter further, telling the court that he did not believe anything inappropriate was done and thought the investigator took the appropriate action.

Bozzie now complains that the trial court failed to interrogate the juror to determine the substance of her conversation with Holbrook's girlfriend and failed to ask the other jurors if they knew about the improper contact. Bozzie argues that, because of the limited inquiry into the incident, the State failed to

11

rebut the presumption that the juror irregularity prejudiced him. See <u>Henry v.</u> <u>State</u>, 265 Ga. 732, 738 (7) (a) (462 SE2d 737) (1995) ("There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred." (citation and punctuation omitted)).[3] But Bozzie cannot complain about the alleged juror misconduct where trial counsel elected not to investigate the matter further because he did not believe anything inappropriate occurred. See <u>Holcomb v. State</u>, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997) (defendant could not complain about trial court's failure to investigate alleged juror misconduct where trial counsel stated that defendant suffered no harm from the misconduct).

4. Bozzie argues that trial counsel was ineffective on several grounds. To prevail on any of his claims, Bozzie must show both that his counsel's performance was constitutionally deficient and that, but for this deficiency, there is a reasonable probability that the outcome of the trial would have been more

---

[3] This presumption arises only when a juror engages in misconduct that has the potential to injure a defendant's due process rights, such as where the juror discusses the defendant's guilt with another juror prior to deliberations or obtains information about the case from outside sources. See <u>Dixon v. State</u>, 302 Ga. 691, 694-695 (3) (a) (808 SE2d 696) (2017).

favorable to him. Armour v. State, 290 Ga. 553, 554 (2) (722 SE2d 751) (2012) (citing Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)). To establish deficient performance, Bozzie must overcome the strong presumption that his counsel performed reasonably by establishing that "no reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not." Davis v. State, 299 Ga. 180, 183 (2) (787 SE2d 221) (2016). A reviewing court need not examine both Strickland prongs if an appellant fails to make a sufficient showing on one. Id. We review the trial court's factual findings for clear error and its legal conclusions de novo. Arnold v. State, 292 Ga. 95, 96 (1) (734 SE2d 382) (2012).

(a) Bozzie argues that trial counsel was deficient for introducing Bozzie's prior felony convictions during his direct testimony because the trial court had previously ruled that the State was prohibited from introducing his convictions as "other acts" evidence under OCGA § 24-4-404 ("Rule 404").[4] The four convictions included three convictions for domestic violence from 1993, 1996,

---

[4] Bozzie made no separate claim that trial counsel was deficient for failing to consult with him about introducing his prior convictions; therefore, any such claim has been waived. See Prince v. State, 295 Ga. 788, 793 (2) (b) (764 SE2d 362) (2014).

13

and 2006[5] and one 1996 conviction for felony reckless evasion for directing a car toward a sheriff's vehicle while attempting to elude officers. In denying the State's Rule 404 motion, the trial court ruled that any probative value of the prior convictions was outweighed by the risk of unfair prejudice.

Trial counsel testified at the motion for new trial hearing that Bozzie insisted on testifying, counsel thought the prior convictions would be "in play" for impeachment purposes, and it would look worse to the jury if he did not introduce the convictions and the court later ruled that the convictions were admissible for impeachment purposes.

Even assuming that trial counsel's decision to introduce Bozzie's convictions was objectively unreasonable particularly given the trial court's prior ruling,[6] Bozzie cannot establish prejudice. Multiple eyewitnesses testified about Bozzie's actions at the McDonald's and in intentionally running over Morgan. Given this strong evidence of guilt, Bozzie has failed to show that he

---

[5] At trial, Bozzie stated that the conviction was in 2008, but there appears to be no dispute on appeal that the conviction was in 2006.

[6] Compare Collier v. State, 288 Ga. 756, 758 (3) (707 SE2d 102) (2011) (trial counsel did not act unreasonably in "placing the damaging information before the jury through [defendant's] direct testimony, rather than risk having the information extracted from him on cross-examination." (citation and punctuation omitted)).

was prejudiced by any deficient performance of trial counsel. See Toomer v. State, 292 Ga. 49, 59 (4) (734 SE2d 333) (2012) (given strong evidence of guilt, defendant failed to establish he was prejudiced by counsel's alleged errors related to bad character evidence).

(b) Bozzie next argues that trial counsel was ineffective for failing to object to the introduction of photographs of the victim and to certain hearsay statements. We concluded above in Division 2 (b) that the photographs of the victim at the crime scene and prior to the autopsy were admissible, and thus counsel was not ineffective for failing to make a meritless objection. See Wesley v. State, 286 Ga. 355, 357 (3) (689 SE2d 280) (2010).

As to the challenged in-life photograph and the challenged statements, we concluded above in Divisions 2 (a) and (c) that there was no plain error in admitting this evidence because the evidence had no effect on the outcome of Bozzie's trial. The prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim. See Martin v. State, 298 Ga. 259, 277-278 (6) (c) (779 SE2d 342) (2015). Even considering cumulatively the evidence alleged to be improperly admitted, Bozzie's ineffective assistance claim fails.

(c) Bozzie also argues that trial counsel was ineffective for failing to pursue the issue of the juror's contact with Holbrook's girlfriend after the first day of the trial. We disagree.

Trial counsel explained at the motion for new trial hearing that he believed the conversation was generally harmless given the lack of evidence that anything inappropriate happened. Counsel also testified that he did not want to single out the juror because he considered her a good juror for the defense, noting that he was surprised that the State allowed her on the jury. Trial counsel's decision was not unreasonable and, thus, did not amount to deficient performance. See Taylor v. State, 302 Ga. 176, 178 (2) (805 SE2d 851) (2017) (trial counsel's decision not to strike domestic violence victim from jury because counsel thought she might be sympathetic to defense was not deficient).

(d) Bozzie also asserts that trial counsel was ineffective for failing to cross-examine five witnesses. One witness was Verner's mother, who testified about her conversation with Bozzie on the night before Morgan's death. Two witnesses testified about observing the incident at the McDonald's. The last two witnesses were police officers: a detective who retrieved an image from a security video showing Bozzie shortly after Morgan died; and a police officer

16

who arrested Bozzie. Bozzie asserts that trial counsel should have cross-examined these witnesses to test their recollections and to see if they would "slip up with any lies or inconsistencies." This type of speculation about what the witnesses might have said on cross-examination is insufficient to establish prejudice, even if Bozzie could have shown deficient performance. See Jimmerson v. State, 289 Ga. 364, 369 (2) (f) (711 SE2d 660) (2011) (prejudice prong not satisfied where defendant failed to offer evidence that would have been elicited on re-cross-examination).

(e) Bozzie argues that trial counsel was ineffective for failing to confront Holbrook with a letter he wrote to Bozzie. In the letter, Holbrook stated:

> Between you and me I am the person you assaulted with your truck and the bat that morning at McDonalds. I have no hard feelings toward you about that. I don't want any problems about it. I also know I'm a witness about the murder. I can help you with this. You should talk with me about this if you want less time in prison. [A] lot less. Just talk to me [q]uietly. Your choice.

Trial counsel explained that he thought the letter was meaningless, Bozzie could not benefit from it, and Holbrook was trying to help himself more than help Bozzie, although counsel didn't understand what Holbrook had to gain. Trial counsel also stated that Holbrook did not do well when testifying at trial

17

(a reasonable assessment in the light of the record), and counsel did not confront Holbrook with the letter because it would have made Holbrook more important to the prosecution, which would not have helped the defense. Deciding what evidence to present or forego in defending a client charged with a crime is a matter of strategy and tactics, and such decisions do not amount to deficient performance unless they are so unreasonable that no competent attorney would have made them under similar circumstances. See Washington v. State, 294 Ga. 560, 566 (3) (755 SE2d 160) (2014); Nichols v. State, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007). Trial counsel's decision not to confront Holbrook with the letter was not unreasonable and, thus, was not deficient performance.

5. Bozzie also argues that the trial court violated his due process rights by denying his request to be present at the motion for new trial hearing. We disagree.

At a hearing on Bozzie's request, appellate counsel provided three reasons why Bozzie's presence would contribute to the fairness of the hearing. First, Bozzie raised an ineffective assistance claim and, as a result, Bozzie might have to testify "if there is any difference of opinion between Mr. Bozzie and defense counsel as to why certain things were done." Appellate counsel also argued that

18

Bozzie's presence was required to authenticate the letter written by Holbrook and to testify about it. Finally, appellate counsel argued that Bozzie's presence was required because counsel had not had an opportunity to meet with Bozzie in person. The State argued that none of Bozzie's claims required his presence, he was not the right person to authenticate the letter, and it might be willing to admit the letter into evidence without witness authentication. When pressed by the trial court, appellate counsel argued that the strongest argument for securing Bozzie's attendance was so that Bozzie could authenticate and offer his interpretation of the letter. The trial court ruled that appellate counsel had not made a sufficient showing to require Bozzie's attendance. At the motion for new trial hearing, appellate counsel offered a proffer of Bozzie's testimony and the Holbrook letter, which were both admitted as exhibits, with the State stipulating that the letter was written by Holbrook to Bozzie.

As Bozzie concedes, he had no unqualified right to be present at the motion for new trial hearing. See Rosser v. State, 284 Ga. 335, 336 (2) (667 SE2d 62) (2008); Sims v. Smith, 228 Ga. 136, 137 (184 SE2d 347) (1971). Citing case law from our Court of Appeals, which in turn relies on case law from the Eleventh Circuit considering federal due process concerns, Bozzie

19

argues that due process required his presence because he would have offered testimony that was relevant to the issues presented in his motion. Specifically, he argues that he would have testified about the relevance of Holbrook's letter and trial counsel's failure to discuss strategic decisions with Bozzie.

As to Holbrook's letter, the State stipulated to its admission, and thus the trial court was aware of its contents. Appellate counsel was more than capable of making an argument as to the significance of the letter without Bozzie's testimony.

Bozzie's testimony was also unnecessary to any of his ineffective assistance claims. Bozzie argues that his testimony would have been relevant to trial counsel's failure to discuss strategic decisions with him, and that counsel's failure to consult with Bozzie reflects that counsel's actions were not strategic. But Bozzie did not raise a claim below that counsel was ineffective for failing to consult with him, and he may not now argue grounds on appeal that he did not argue below. See Bryant v. State, 288 Ga. 876, 894 (13) (b) (708 SE2d 362) (2011).

To the extent Bozzie argues that counsel's failure to consult showed that counsel did not actually think about certain issues and, thus, his decisions were

not strategic, the determination of counsel's performance is based on the objective reasonableness of his actions, not his subjective state of mind. See Hartsfield v. State, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014). Therefore, even if Bozzie's testimony was relevant toward a determination of counsel's state of mind, Bozzie's testimony was not relevant to the task before the trial court: assessing the objective reasonableness of counsel's actions. He has thus failed to establish that his due process rights were violated when he was denied presence at the motion for new trial hearing.

Judgment affirmed. All the Justices concur.

Decided December 11, 2017.

Murder. Whitfield Superior Court. Before Judge Partain.

Micah J. Gates, for appellant.

Herbert M. Poston, Jr., District Attorney, Susan A. Beck, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General, for appellee.