312 Ga. 232
FINAL COPY

S21A0779.  WALKER v. THE STATE.

LaGrua, Justice.

Appellant Hezekiah Walker was convicted of felony murder and other offenses in connection with the May 2018 shooting death of Samuel Davis IV.[1]  On appeal, Appellant contends that (1) the evidence was insufficient to support his convictions and to overcome his justification defense; (2) the prosecutor's closing argument

---

[1] The crimes were committed on May 16, 2018.  Appellant was indicted by a Fulton County grand jury on September 19, 2018, on one count of malice murder; two counts of felony murder; one count of aggravated assault; one count of criminal attempt to sell marijuana; and one count of possession of a firearm during the commission of a felony.  At a jury trial held in March 2019, Appellant was acquitted of malice murder and found guilty of all other counts.  On April 1, 2019, Appellant was sentenced to life in prison for felony murder, a consecutive five-year term for criminal attempt to sell marijuana, and a second consecutive five-year term for the firearm-possession count.  The second felony murder count was vacated by operation of law, and the aggravated assault count merged into the first felony murder count.  Appellant filed a motion for new trial on April 1, 2019, which he amended through new counsel on March 6 and July 31, 2020.  Following a hearing held on October 22, 2020, the trial court denied the motion for new trial in an order entered on December 15, 2020. The trial court granted Appellant an out-of-time appeal on February 2, 2021, and Appellant filed a notice of appeal that same day.  The appeal was docketed to the April 2021 term of this Court and was thereafter submitted for a decision on the briefs.

violated his right to a fair trial; (3) the trial court erred by excluding certain photographs of the victim offered by the defense while allowing the State to offer a different photograph of the victim; and (4) trial counsel rendered ineffective assistance in various respects. We see no error, and thus we affirm.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at trial established that, at 2:15 a.m. on May 16, 2018, Davis was shot and killed in the parking lot of a Shell gas station in Fairburn. Two of Davis's friends, who were interviewed by police at the scene, described the shooter as a heavy-set man with dreadlocks who fled in a red Mustang with white stripes. In the parking lot, crime scene investigators found ten nine-millimeter shell casings, eight .40-caliber shell casings, a counterfeit $100 bill, and an iPhone, which was later determined to be Davis's. Davis died from multiple gunshot wounds. The bullets and bullet jacket recovered from Davis's body were later determined to have been fired from a nine-millimeter pistol. Ballistics testing determined that all of the nine-millimeter shell casings had been fired from a

2

single weapon and, likewise, all of the .40-caliber shell casings had been fired from a single weapon.

Witness Christopher Stodghill, a close friend of Davis, testified that he had been with Davis and another friend, Cerdon Abeny, during the day and evening preceding the shooting. At some point during the evening, Davis arranged to buy some marijuana. The trio drove to a Waffle House for this purpose, but the seller never showed up. Stodghill and Abeny then dropped Davis off at Davis's apartment and drove to the Shell gas station across the street. After exiting the car, Stodghill noticed a man with dreadlocks, whom he recognized as having previously sold marijuana to Davis; the man had a gun tucked under his arm. Stodghill went into the gas station's convenience store and was soon joined by his brother, Daniel, and another friend, Chalyne Tolbert, who had just arrived at the gas station. While they were in the convenience store, they heard gunshots coming from outside. Stodghill ran out to find Davis face down in the parking lot next to the convenience store. Daniel also ran outside, saw Davis on the ground, and returned fire with a

3

.40-caliber handgun in the direction of the shooter, who fled in a red Mustang.

Video from the gas station's security camera, which was played at trial, shows a red Mustang with white stripes driving up to a gas pump at 2:12 a.m. A man, identified as Appellant, gets out of the front passenger side, walks out of the frame, and then walks back and begins pumping fuel. Another man, identified as Davis, is seen approaching the gas station on foot and walking up to Appellant. The men walk to the side of the convenience store, outside the view of the camera. Seconds later, Appellant comes into view, rapidly backing up and firing shots. Appellant jumps into the Mustang, which speeds off. Immediately after the shots are heard, a man identified as Daniel exits the store, surveys the scene, and begins firing at the fleeing Mustang. A man identified as Stodghill runs over to Davis.

Stodghill confirmed during his testimony that the video also shows him removing a gun from Davis's lower body. Stodghill

testified that this gun was his, that he removed it from either Davis's pocket or a fanny pack and gave it to Tolbert, and that Tolbert then ran from the scene. He acknowledged that he had initially failed to tell investigators about removing the gun and that it was only after questioning by an investigator several months later that he admitted having done so.

Davis's girlfriend, Sydni Jordan, testified that she drove Daniel and Tolbert to the gas station on the night of the shooting and that she stayed in the car while they went inside to buy drinks and snacks. While she sat there, she saw Davis walk past the car with a man and shortly thereafter heard shots and saw gunfire.

South Fulton Police Detective Terrence Jackson testified that the call log from Davis's cell phone showed the last received call was at approximately 2:05 a.m. The associated phone number was listed in Davis's contacts as "plug," which, Detective Jackson testified, is street slang for a drug dealer. Detective Jackson ran the phone number through a police database, which linked the number to Appellant. From a photographic lineup shown on the morning of the

5

shooting, Stodghill identified Appellant as the man with dreadlocks he had seen before entering the convenience store, and Jordan identified Appellant as the man she had seen walking with Davis just before the shooting.

Appellant admits that he shot Davis but claims he did so in self-defense. At trial, the defense theory was that Davis lured Appellant to the gas station with the intent to rob him and brandished a gun first. Appellant testified that he met Davis a few weeks before the shooting, that Davis contacted him on May 15 about purchasing marijuana, and that, because he was "picky" about those he did business with, he was planning to meet Davis only "to get to know him more" and took no marijuana with him to the meeting. According to Appellant, when he arrived at the gas station, Davis approached and invited him to "take a walk." Davis ushered Appellant over to the side of the convenience store, where Davis pulled out what looked like a $100 bill with one hand and a gun with the other. Appellant pulled his gun and fired, then ran back to his red Mustang, where his girlfriend Tamyah Clark was waiting. With

6

gunshots hitting the car, Clark drove off. The next day, Appellant drove to a wooded area and threw his gun into the woods.

Clark admitted that she knew Appellant was a marijuana dealer. She testified, however, that she had not seen any drugs in the car or in Appellant's possession on the night of the shooting and had not overheard Appellant's phone conversations that evening. Clark admitted that they did not call the police after leaving the scene. On cross-examination, Clark testified that Appellant told her during a post-arrest phone conversation to give a police statement saying that she had seen a gun in Davis's possession at the gas station. Clark refused because she was unsure of what she had seen. That jail phone call was recorded, and the recording was played for the jury.

The jury also heard a recording of Appellant's jail phone conversation with his friend Michael Dixon. In the recording, Appellant can be heard telling Dixon that Clark saw him "weigh that sh*t up" before they left for the gas station, and Dixon remarks that Clark knew they were going to the gas station to "sell weed" and

7

"make a transaction."

1. Appellant contends that the evidence was insufficient to overcome his justification defense and support his convictions. We disagree.

> When evaluating the sufficiency of evidence, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. In making that determination, we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the jury. As long as there is some competent evidence, even if contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Thomas v. State*, 311 Ga. 573, 575 (1) (858 SE2d 504) (2021) (citations and punctuation omitted).

Here, Appellant admits that he shot Davis. Thus, the only question as to the sufficiency of the evidence supporting Appellant's convictions for felony murder and firearm possession was whether the shooting was committed in self-defense. Although Appellant testified that he fired his gun only after Davis brandished his, the jury was entitled to disbelieve this testimony, and ample

8

corroborating evidence exists to support the convictions. See *Daughtie v. State*, 297 Ga. 261, 263-264 (2) (773 SE2d 263) (2015). Though it is undisputed that Davis had a gun on his person at the time of his encounter with Appellant, there was no evidence — apart from Appellant's own testimony — that Davis drew the gun. It is clear that Davis never fired his gun, as the ballistics evidence established that only two guns were fired, and the surveillance video showed that the second shooter was Daniel, not Davis. Further, Stodghill testified that the gun he removed from Davis's body was either in Davis's pocket or in his fanny pack. The jury was thus authorized to find beyond a reasonable doubt that Appellant was not acting in self-defense at the time he shot Davis. See *Carter v. State*, 310 Ga. 559, 561-562 (1) (b) (852 SE2d 542) (2020) (affirming jury's rejection of appellant's self-defense claim); *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013) ("[T]he jury is free to reject a defendant's claim that he acted in self-defense.").

The evidence was also sufficient to support Appellant's conviction for criminal attempt to sell marijuana. Appellant

admitted that he was a marijuana dealer, that Davis contacted him about purchasing marijuana, and that he agreed to meet Davis on the night of the shooting. Although Appellant contends that he had no plans to sell marijuana to Davis that night, the jury was authorized to disbelieve this assertion, particularly in light of Stodghill's testimony that Davis was attempting to buy marijuana that night and Appellant's recorded remarks about "weigh[ing] that sh*t up" before leaving for the gas station. See *Daughtie*, 297 Ga. at 263-264 (2).

Accordingly, the evidence presented at trial was sufficient as a matter of constitutional due process to authorize a rational jury to find beyond a reasonable doubt that Appellant was guilty of all the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant contends that a remark made during the State's closing argument amounted to prosecutorial misconduct. Specifically, the prosecutor argued:

> To acquit this man, you're going to have to disregard

10

everything that you heard in this case; you're going to have to disregard the law because the evidence supports wholeheartedly that this defendant went there to that gas station to sell this victim weed. . . . *And so to acquit this man would mean that you would have to violate your oath as jurors in following the law and looking at the facts in a fair and impartial manner.* Because if you do that, the only reasonable conclusion is that he's guilty of all counts.

(Emphasis supplied.) Appellant contends that this statement was improper and prejudicial and violated his rights to due process and a fair trial. However, as Appellant concedes, he failed to object to this statement at trial. Accordingly, Appellant has waived appellate review of this alleged error. See *Gates v. State*, 298 Ga. 324, 328 (4) (781 SE2d 772) (2016) (the failure to object during closing arguments waives appellate review — even for plain error — of alleged errors therein). See also *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (noting that this Court has declined to extend plain error review outside a narrow range of issues absent statutory authority).

3. Appellant contends that the trial court erred by allowing the State to introduce an in-life photograph of Davis while declining to

11

allow the defense to offer its own in-life photographs of Davis. During Stodghill's testimony, the State offered into evidence a photograph of Davis wearing a graduation cap and gown and holding a diploma, which the trial court admitted over the defense's relevancy objection. Appellant's trial counsel then sought to offer five images, apparently from a social media feed, depicting Davis holding cash and a handgun and flashing what could be characterized as gang signs. Counsel stated that he was offering these images "as an in-life photo of the deceased" but stated further that, "anticipating the State's argument that [they] go to character," that objection should fail because "that's a door that the State has already opened" by offering the graduation photograph. The State objected, and the trial court declined to admit the images, finding that, to the extent they were offered as in-life photographs, they were cumulative of the State's in-life photograph, and to the extent they were offered as character evidence, they were unduly prejudicial and did not satisfy the applicable requirements of the

Georgia Evidence Code, see OCGA §§ 24-4-404 (a)[2] and 24-4-405.[3]

Later, after an exchange in which Stodghill testified that he and his

friends carried guns only for their protection and not to rob people,

---

[2] OCGA § 24-4-404 (a) provides:

(a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:

(1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;

(2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or

(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609.

[3] OCGA § 24-4-405 provides:

(a) In all proceedings in which evidence of character or a trait of character of a person is admissible, proof shall be made by testimony as to reputation or by testimony in the form of an opinion.

(b) In proceedings in which character or a trait of character of a person is an essential element of a charge, claim, or defense or when an accused testifies to his or her own character, proof may also be made of specific instances of that person's conduct. The character of the accused, including specific instances of the accused's conduct, shall also be admissible in a presentencing hearing subject to the provisions of Code Section 17-10-2.

(c) On cross-examination, inquiry shall be allowable into relevant specific instances of conduct.

13

trial counsel again sought admission of the images. Pointing out that the text shown on the social media feed used the term "jug" — street slang for "robbery" — counsel argued that Stodghill "opened the door" to admission of the images, which "completely contradict[ed]" Stodghill's testimony. The trial court, noting that trial counsel had earlier conceded that the text on the images would likely have to be redacted as lacking foundation, again ruled the images inadmissible.

We have held generally that, in a murder case, "a photograph of a victim in life may be relevant to prove an element of the corpus delicti, that is, that the person alleged to have been killed is actually dead." *Ragan v. State*, 299 Ga. 828, 832 (3) (792 SE2d 342) (2016) (citation and punctuation omitted). We have also noted, however, that "certain steps must be taken to ensure that the tenuous probative value of a victim-while-in-life photograph is not subsumed by [its] substantial prejudicial impact." Id. In this regard, we have encouraged the State to use photographs depicting the victim alone and to proffer them through witnesses other than the victim's

14

relatives. See *Lofton v. State*, 309 Ga. 349, 355 (2) (b) (846 SE2d 57) (2020). Here, the State followed these prescriptions, proffering its photograph of Davis, pictured alone, through Stodghill, a non-family member. Thus, to the extent Appellant now challenges the admission of the State's photograph, we see no abuse of discretion.

Appellant also contends, however, that because the photograph of Davis wearing a cap and gown was essentially "good character" evidence, he should have been allowed to offer his five images under OCGA § 24-4-404 (a) (2). As an initial matter, we do not accept Appellant's characterization of the State's photograph as "good character" evidence; the mere indication of Davis's graduation was not offered or argued as evidence of any particular character trait, and thus the photograph's admission did not, as Appellant argues, open the door to the admission of evidence of Davis's alleged bad character.

In addition, while it is true that evidence of a "pertinent trait" of a victim's character may be admissible under OCGA § 24-4-404 (a), Appellant never identified any particular character trait the

images were offered to establish. Moreover, "as a general rule, character evidence of a victim is limited to reputation or opinion." *Mohamud v. State*, 297 Ga. 532, 536 (3) (773 SE2d 755) (2015). See also OCGA § 24-4-405 (a). The images Appellant sought to admit constitute neither reputation nor opinion evidence. And while evidence of specific instances of conduct may be admissible under OCGA § 24-4-405 (b) where the character trait sought to be proven "is an essential element of a charge, claim, or defense[,]" id., Appellant never argued at trial that these images were being offered for this purpose, and they would not have been admissible on this basis in any event. See *Griffin v. State*, 309 Ga. 860, 873 (5) (b) (849 SE2d 191) (2020) (a victim's violent character is not an essential element of a self-defense claim). Thus, the photographs were not in a form that was admissible under OCGA § 24-4-405 (a) or (b), and the trial court did not abuse its discretion in excluding them.[4]

---

[4] We do not address — as Appellant raised below, but not on appeal — whether the images might have been admissible as impeachment evidence.

16

4. Appellant also contends that his trial counsel rendered constitutionally ineffective assistance in various respects. To establish ineffective assistance, a defendant generally must show both that his counsel's performance was deficient and that this deficient performance prejudiced him. See *Strickland v. Washington,* 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Deficient performance requires a showing that counsel discharged his responsibilities in an "objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Thomas v. State*, 303 Ga. 700, 702 (2) (814 SE2d 692) (2018) (citation and punctuation omitted). Prejudice is shown by demonstrating "a reasonable probability[,] sufficient to undermine confidence in the outcome[,] that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (citation and punctuation omitted). "If either *Strickland* prong is not met, this Court need not examine the other prong." *Palmer v. State*, 303 Ga. 810, 816 (IV) (814 SE2d 718) (2018).

(a) Appellant first contends that his trial counsel was ineffective for failing to "properly introduce" Appellant's in-life photographs of Davis. Specifically, Appellant maintains that the photographs would have been admitted if counsel had offered them again after Appellant testified that Davis was the aggressor in their encounter and thus presented prima facie evidence of self-defense. However, as we have already held, the photographs were not admissible as character evidence because they were neither reputation nor opinion testimony and because they did not provide proof of any element of Appellant's self-defense claim so as to be admissible under OCGA § 24-4-405 (b). This claim is therefore meritless. See *Coggins v. State*, 275 Ga. 479, 481-482 (3) (569 SE2d 505) (2002) (counsel's failure to assert non-meritorious claim does not constitute deficient performance).

(b) Appellant next contends that trial counsel was ineffective for failing to investigate the criminal histories of the State's witnesses and, specifically, to discover that, at the time of trial, Stodghill had charges pending against him in Fulton County for

18

theft by receiving and misdemeanor tampering with evidence. According to evidence presented at the motion for new trial hearing, the latter charge alleged that Stodghill had removed a weapon from the scene of a suicide. Appellant claims that evidence that Stodghill may have previously removed a gun from a crime scene, because of its similarity to Stodghill's conduct at the crime scene here, would have supported a finding that Davis was carrying a gun at the time of the shooting and thus supported Appellant's self-defense claim. Appellant also claims that evidence of these pending charges would have been useful in impeaching Stodghill generally.

Although it is true that evidence of pending charges may be relevant to show a witness's bias, Appellant has presented no evidence that Stodghill had any agreement with the State as to his pending charges or any reason to shade his testimony in favor of the State. Because there is no evidence of any nexus between Stodghill's pending charges and his testimony at Appellant's trial, Appellant can show no prejudice from trial counsel's failure to discover and attempt to impeach Stodghill with evidence of the pending charges.

19

See *Colzie v. State*, 289 Ga. 120, 124 (3) (710 SE2d 115) (2011) (where there was no evidence of any deal or hope of a deal between witness and prosecution, counsel was not ineffective in failing to impeach witness with evidence of pending charges). Similarly, given that Stodghill admitted taking a gun from Davis's body, there was no prejudice in trial counsel's failing to present evidence that he was charged with doing so on another occasion. See *Wesley v. State*, 286 Ga. 355, 358 (3) (h) (689 SE2d 280) (2010) (counsel's failure to present cumulative evidence does not result in prejudice).

(c) Appellant contends that his trial counsel was ineffective for failing to object in several instances during the State's closing argument. At the outset, we note that "[a] prosecutor is granted wide latitude in the conduct of closing argument, . . . [and] [w]ithin that wide latitude, [he] may comment upon and draw deductions from the evidence presented to the jury." *Gaston v. State*, 307 Ga. 634, 640 (2) (b) (837 SE2d 808) (2020) (citation and punctuation omitted). In addition, "[w]hether to object to a particular part of a prosecutor's closing argument is a tactical decision, and counsel's

20

decision not to make an objection must be patently unreasonable to rise to the level of deficient performance." *Smith v. State*, 296 Ga. 731, 735-736 (2) (b) (770 SE2d 610) (2015) (citations and punctuation omitted). Here, trial counsel testified at the motion for new trial hearing that his general practice was to refrain from objecting during closing arguments unless the prosecutor's transgressions were "egregious" or "repeated."

(i) Appellant first points to counsel's failure to object to the prosecutor's statement that he had "prosecuted enough drug dealers to know" how dangerous drug transactions can be. Given that Appellant himself testified that he was in the business of selling marijuana, there was nothing improper about the prosecutor's reference to drug dealers, and because there is nothing surprising about the assertion that drug transactions are dangerous, counsel could have reasonably chosen not to object to the prosecutor's comment, even if it was objectionable. See *Rich v. State*, 307 Ga. 757, 762 (3) (838 SE2d 255) (2020) (attorney's decision not to object to isolated improper remark during closing may be "a valid exercise

21

of his or her professional judgment").

(ii) Appellant next points to counsel's failure to object when the prosecutor referred to Appellant as a "psychopath." This statement was made in direct response to trial counsel's closing argument, in which counsel had referred to Daniel as a "psychopath" for "running to the gunfight" after hearing the first gunshots. At the motion for new trial hearing, trial counsel testified that he did not object to the prosecutor's "psychopath" reference because he himself had used that term first, and because he did not find the prosecutor's argument to be very effective. Counsel's decision not to object in this instance was reasonable and affords no basis for a finding of deficient performance. See *Jackson v. State*, 281 Ga. 705, 708 (6) (642 SE2d 656) (2007) (counsel's decision not to object during closing argument was a "matter[ ] of reasonable trial strategy" that did not support an ineffectiveness claim) (citation and punctuation omitted).

(iii) Appellant next challenges counsel's failure to object when the prosecutor cited Appellant's remark to Dixon about "weigh[ing]

22

that sh\*t up" and argued that this was a reference to "weighing up" marijuana. Given that Dixon responded to Appellant's remark with a reference to "sell[ing] weed," and given the evidence that Appellant was a drug dealer and had communicated with Davis about selling marijuana on the night of the shooting, the prosecutor's statement represented a reasonable inference from the evidence. Trial counsel was thus not deficient in failing to object in this instance. See *Arnold v. State*, 309 Ga. 573, 577 (2) (a) (847 SE2d 358) (2020) (where there was evidentiary basis for inference made during closing argument, counsel's failure to object did not give rise to ineffectiveness claim).

(iv) Finally, Appellant contends that trial counsel was ineffective in failing to object to the prosecutor's statement that acquitting Appellant would require the jurors to "violate [their] oath." See Division 2 above. Though made in the context of an argument about the weight of the evidence, this remark comes uncomfortably close to — and may well cross over — the boundaries of permissible argument. See *United States v. Young*, 470 U.S. 1, 18

23

(IV) (105 SCt 1038, 84 LE2d 1) (1985) (stating that an exhortation to the jury to "do its job" "has no place in the administration of criminal justice") (punctuation omitted).  However, in light of all the evidence presented and the isolated nature of the remark, even assuming we were to conclude that the remark was improper and that trial counsel's failure to object was objectively unreasonable, we cannot say that, had trial counsel objected, there is a reasonable probability that the result of Appellant's trial would have been different.  See *Richardson v. State*, 304 Ga. 900, 902-903 (2) (b) (823 SE2d 321) (2019) (while prosecutor's remark during closing was "troubling," defendant could not demonstrate prejudice from counsel's failure to object).  Accordingly, Appellant's ineffectiveness claim in this regard fails.[5]

*Judgment affirmed.  All the Justices concur, except Colvin, J., not participating.*

---

[5] We also conclude that any cumulative prejudice from the deficiencies assumed in Division 4 (b) and (c) (iv) does not create a reasonable probability that the result of the proceedings would have been different in the absence of the deficiencies alleged.  See *Wilkins v. State*, 308 Ga. 131, 141 (6) (839 SE2d 525) (2020).

Decided August 10, 2021.

Murder. Fulton Superior Court. Before Judge Ellerbe.

*Ashleigh B. Merchant*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, David K. Getachew-Smith, Sr., Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.