**FIFTH DIVISION
PHIPPS, P. J.,
DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 12, 2016**

# In the Court of Appeals of Georgia

A16A0486. TINSON v. THE STATE.                                    PE-017 C

PETERSON, Judge.

Roderick Tinson appeals his convictions and sentence for aggravated child molestation, rape, incest, and two counts of sexual battery. He argues that the evidence was insufficient to support his convictions and that the trial court erred by failing to merge the rape and incest convictions for sentencing purposes. Because the evidence was sufficient to authorize the jury's guilty verdicts and the trial court did not err in sentencing Tinson for both rape and incest, we affirm.

1. When appellate courts review the sufficiency of the evidence, they do not "re-weigh the evidence or resolve conflicts in witness testimony" but instead defer "to the jury's assessment of the weight and credibility of the evidence." *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010) (citation omitted). We determine

whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (99 S. Ct. 2781, 61 LE2d 560) (1979) (citation omitted) (emphasis in original).

So viewed, Tinson's daughter, A. A., testified that Tinson began touching her breasts and genital area when she was 14 years old. After A. A.'s mother would leave their home in the morning, Tinson would enter A. A.'s room and touch her breasts, thighs, and, in A. A.'s words, "my whole body, places that he didn't need to be touching." He did not stop when she told him to. This escalated to vaginal intercourse between Tinson and A. A. after she turned 15. Tinson and A. A. had sexual intercourse more than 10 times but less than 20. A. A. told him the intercourse was painful, but he persisted. A. A. testified that she did not desire or consent to the sexual activity with her father.

In 2011, when A. A. was 15, A. A. made outcries to family members, telling her mother that her father had been "messing with" her. Tinson briefly moved out of the family home, but police were not involved at that time. A. A.'s mother later said she had difficulty believing A. A.'s outcry because her daughter had been lying about minor matters and had just been punished by her father for bad grades. A. A. testified

2

that when Tinson moved back in, he punished her for her outcry by whipping her, and the sexual touching and intercourse resumed. On August 23, 2012, when A. A. was 16, she told a teacher at her school that her father had touched her breast and vaginal area. A. A. testified that she had engaged in sexual intercourse with her father that same morning. Sometime prior to making the report to her teacher, A. A.'s mother had grounded her and taken away her cell phone.

On August 24, 2012, the day after she made an outcry to her teacher, A. A. was taken by police to a non-profit center that conducts medical evaluations of and interviews alleged victims of sexual assault or physical abuse. A. A. had engaged in sexual intercourse with her father that morning. The center's director conducted a forensic interview of A. A., but A. A. did not tell the investigator everything her father had done to her because she was afraid. A nurse examined A. A. and found some abnormal discoloration in her genital area that the nurse testified could be the result of friction or blunt force consistent with penetration or masturbation. The nurse also observed that A. A.'s hymen had an abnormal contour, which also could indicate an injury consistent with the account A. A. had given, although the nurse could not say what caused the injury. The nurse did not observe bleeding or injuries elsewhere on A. A.'s body. A swab of A. A.'s vagina revealed the presence of human male

3

DNA, but not enough to develop a profile of that DNA's donor. Police retrieved linens from Tinson's home, but they were not tested for DNA.

A jury acquitted Tinson of rape and incest based on charges that he had sex with A. A. in 2011, but found him guilty of rape and incest based on charges that he had sex with her on or about August 24, 2012. The jury also found Tinson guilty of two counts of sexual battery based on charges of actions toward A. A. on or about August 23, 2012, as well as aggravated child molestation based on alleged actions toward A. A. in 2011. The trial court sentenced Tinson to two terms of life without parole for aggravated child molestation and rape and 20 additional years for incest, all to be served concurrently, and sentenced him to time served for the sexual battery convictions.

The evidence was sufficient to authorize the jury's guilty verdicts. A. A. testified that, prior to her turning 16, Tinson touched her genitals and engaged in sexual intercourse with her, evidence from which the jury could conclude that Tinson molested A. A. while she was still a child under the meaning of the statute. *See* OCGA § 16-6-4(a) (defining child molestation as "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person"). She also testified that

the intercourse was physically painful, supporting an aggravated child molestation conviction. *See* OCGA § 16-6-4(c) (aggravated child molestation requires proof of physical injury or act of sodomy); *Mangham v. State*, 291 Ga. App. 696, 697 (662 SE2d 789) (2008) (victim's testimony that molestation was painful sufficient to prove physical injury element). She testified that the sexual touching and intercourse continued up to and including August 24, 2012, the date she went to the non-profit center. That the intercourse took place between father and daughter supports the incest conviction. *See* OCGA § 16-6-22(a)(1). A. A.'s testimony that she did not consent to the intercourse or intimate touching also supported convictions for sexual battery and rape. *See* OCGA § 16-6-1(a)(1) (rape); OCGA § 16-6-22.1(b) (sexual battery). Although unnecessary to support Tinson's convictions, we note that A. A.'s testimony was corroborated by the medical evidence that A. A.'s genital area appeared abnormal in ways consistent with her account.

Tinson's sufficiency arguments largely consist of (1) attacks on A. A.'s credibility and (2) complaints that her testimony was insufficiently corroborated by physical evidence. He challenges A. A.'s credibility based on a variety of factors, such as a lack of specificity in her initial outcries, inconsistency between her trial testimony and what she told an investigator, and evidence that A. A. had lied on

occasion and been punished prior to making allegations against her father. He also argues that his own cooperation with investigators is evidence of his innocence. But it is for a jury, not this Court, to assess the weight and credibility of the evidence. *See Greeson*, 287 Ga. at 765. The jury had the opportunity to hear trial counsel cross-examine A. A. on the credibility issues that he raises now. Moreover, none of the evidence to which Tinson points is inconsistent with a conclusion that he was guilty of the crimes of conviction.

Addressing the physical evidence, Tinson complains about a lack of DNA evidence tying him to the crime, as well as the examining nurse's testimony that she could not say what caused the abnormal appearance of A. A.'s genital area and that she observed no bleeding or additional injuries. But Georgia law does not require corroboration of a sexual crime victim's testimony. *See Newton v. State*, 296 Ga. App. 332, 336 (1) (b) (674 SE2d 379) (2009) (rejecting argument that evidence was insufficient to support rape and aggravated child molestation convictions given lack of scientific evidence such as DNA results or physical examination); *Scales v. State*, 171 Ga. App. 924, 924-25 (2) (321 SE2d 764) (1984) (no corroboration required for a conviction of sexual offenses, including incest and child molestation). Moreover, the physical evidence, as well as A. A.'s outcries over time, provided some

corroboration of A. A.'s account. The evidence was sufficient for a rational trier of fact to find the essential elements of the crimes of conviction beyond a reasonable doubt.

2. Tinson also argues that the trial court erred by not merging his rape and incest convictions for sentencing purposes because those convictions were predicated on the same act of penetration. We disagree.

Evidence showing that the same conduct established the commission of two crimes does not necessarily mean that those crimes merge. *See Ledford v. State*, 289 Ga. 70, 72 (1) (709 SE2d 239) (2011). Under OCGA § 16-1-7(a)(1), an accused may not be convicted of more than one crime if "[o]ne crime is included in the other." A crime is considered to be included in the other if "[i]t is established by proof of the same or less than all the facts . . . than is required to establish the commission of the crime charged[.]" OCGA § 16-1-6(1). In considering whether crimes merge under that standard, we apply the "required evidence" test, which considers whether each statute requires proof of an additional fact that the other does not. *Ledford*, 289 Ga. at 72 (1). *See also Drinkard v. Walker*, 281 Ga. 211, 214-17 (636 SE2d 530) (2006).[1]

---

[1] Even if that standard is met, crimes still might merge under other provisions of OCGA §§ 16-1-6 and 16-1-7, i.e., if one crime is established by "proof of . . . a less culpable mental state" than the other, if one crime differs from the other only in that

Here, Tinson's rape and incest convictions do not merge because each crime requires proof of an additional fact that the other does not. To establish the crime of rape, the State had to prove that Tinson lacked consent, which is not an element of incest. To establish the crime of incest, the State had to prove that the victim was of a certain relation to Tinson, which is not an element of rape. *Compare* OCGA § 16-6-1(a) *with* OCGA § 16-6-22(a). *See also Drinkard*, 281 Ga. at 213-17 (incest not established by the same or less than all of the facts required to establish the crime of rape); *Dew v. State*, 292 Ga. App. 631, 634-35 (3) (665 SE2d 715) (2008) (same). The cases cited by Tinson are distinguishable in that they find the merger of different crimes, aggravated child molestation and rape. *See Barber v. State*, 283 Ga. App. 129, 130 (1) (640 SE2d 696) (2006); *Lay v. State*, 264 Ga. App. 483, 484-85 (2) (591 SE2d 427) (2003). The trial court did not err in sentencing Tinson for both rape and incest.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.

---

it involves a "less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability," or if one crime differs from another "only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." *See Drinkard*, 281 Ga. at 216 n.32. However, these apply to the sort of closely-related offenses not at issue here. *See id.*

8