**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 7, 2023**

# In the Court of Appeals of Georgia

A22A1269. JOHNSON v. STATE.

PIPKIN, Judge.

Appellant Albert Lee Johnson appeals his convictions for rape, incest, and child molestation, all of which involved his step-daughter, N. J. Johnson argues that the evidence was insufficient, that he was entitled to a mistrial, and that the trial court incorrectly ruled in various evidentiary matters. For the reasons set forth below, we affirm.

When viewed in a light most favorable to the verdicts, see *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced below established as follows. Johnson married N. J.'s mother and has known N. J. since her birth in October 2000. In July 2015, N. J. confided in a cousin that Johnson had been sexually abusing her for years; law enforcement was contacted, and N. J. underwent

a forensic interview. At the May 2017 trial, N. J. testified that the abuse began when she was 10 years old. She recounted that Johnson came into the bathroom where she had been showering,[1] locked the door, and instructed her to get on the floor; N. J. explained that Johnson got on top of her and forced her to have sexual intercourse. According to N. J., Johnson told her that she "was gonna get took from" her family if she told anyone.

N. J. testified that, around this same time, she and Johnson went to take trash to a dumpster and that, when they arrived, Johnson demanded that she get into the back of the vehicle, where he again subjected her to sexual intercourse. When asked why she complied with his demands, she testified that she was scared. The jury heard N. J. testify that she made an earlier outcry about the abuse but then recanted because her "mom started going crazy," and she began to fear that she would indeed be taken from her family. While the abuse ceased for a time after this initial outcry, Johnson again engaged in sexual intercourse with N. J. in her bedroom shortly before the 2015 outcry. According to N. J., she was abused between the ages of 10 and 14, and she testified that Johnson sexually abused her "more than 5 [times] but less than 10."

---

[1] N. J. testified that she had come home from school to take a shower because she was experiencing her first menstrual cycle.

1. In his first enumeration of error, Johnson ostensibly argues that the evidence was insufficient to sustain his convictions, but he does not contend that the State failed to prove an essential element of any of the offenses. Instead, Johnson attacks N. J.'s credibility by pointing to inconsistencies in her various accounts of the abuse, claims that N. J. would have had knowledge of sexual intercourse through alternate means, and asserts that N. J.'s emotional testimony was "highly suspicious" and "inconsistent with her forensic interview." Further, Johnson complains that law enforcement failed to collect any possible "physical or scientific evidence." In short, Johnson maintains that the State's evidence consisted merely of bare assertions from an incredible sole accuser, uncorroborated by any other evidence.[2] This argument fails.

"Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). Further, the victim's prior "recantation [and] the lack of physical evidence go[] to the *weight* of the evidence[.]" (Emphasis supplied.) *Curgil v. State*, 363 Ga. App. 355, 358 (871 SE2d 322) (2022).

---

[2] To the extent that Johnson is arguing that the evidence against him was circumstantial, he is mistaken. See *Curgil v. State*, 363 Ga. App. 355, 358 n.3 (871 SE2d 322) (2022).

On appeal, "[w]e neither weigh the evidence nor determine witness credibility, which are tasks that fall within the exclusive province of the jury[.]" *Allison v. State*, 356 Ga. App. 256, 256 (846 SE2d 222) (2020). "That the jury apparently decided such [credibility] questions adversely to [Johnson] does not render the evidence supporting his convictions insufficient." *Curgil*, 363 Ga. App. at 358.

As recounted above, the jury in this case learned that, on numerous occasions, Johnson engaged in sexual intercourse with N. J. – his step-daughter who, at that time, was under the age of 16 years old – by means of both force and intimidation. The evidence here was plainly sufficient to sustain Johnson's convictions for rape, incest, and child molestation. See *Tinson v. State*, 337 Ga. App. 83, 85-86 (1) (785 SE2d 914) (2016).

2. Johnson next argues that the trial court erred when it denied his motion for a mistrial following "emotional outbursts" by N. J. during her direct testimony. This argument is without merit.

Though it is unclear from the transcript, it appears that N. J. became emotional twice during her direct testimony. In the opening portion of her direct testimony, N. J. was answering a question when the trial court interjected as follows: "We're gonna let you have a Kleenex how about that? We're gonna get you a bottle of water. We're

gonna take the jury out for a minute. Let's take the jury out." Then, a short while later, N. J. says during her direct examination, "I can't do this," at which point the trial court excused the jury at Johnson's request. Johnson thereafter moved for a mistrial, claiming that N. J.'s "outcry of emotion" had "prejudiced" his right to a fair trial. The trial court denied the motion, concluding that N. J.'s emotional response was reasonable under the circumstances.

"A trial court has broad discretion in deciding whether to grant a mistrial, and the grant of a mistrial is required only if it is apparent that a mistrial is essential to the preservation of the right to a fair trial." (Citation and punctuation omitted.) *Ragan v. State*, 299 Ga. 828, 833-34 (3) (792 SE2d 342) (2016). Here, while it appears that N. J. displayed some emotion while testifying, the transcript is silent as to the nature and extent of the episode or any possible impact on the jury. The trial court was in the best possible position to evaluate the situation, and nothing before us suggests that the trial court abused its discretion in denying Johnson's motion for a mistrial. See *Lingerfelt v. State*, 147 Ga. App. 371, 376 (4) (249 SE2d 100) (1978) ("It was not an abuse of discretion to deny a mistrial because the [rape] victim became emotional and cried while recounting the details of her ordeal.").

5

3. In his third enumeration of error, Johnson contends that the trial court erred in prohibiting him from eliciting testimony that N. J. had engaged in consensual sexual activities with other partners. Johnson is not entitled to relief on this claim.

It appears that Johnson raised this issue in a written, pre-trial motion in limine filed on May 5, 2017, and that this motion was discussed with the trial court, at least preliminarily, at some point prior to trial. However, neither the actual motion nor this initial discussion with the trial court are included in the materials before us. Looking at what *is* in the materials before us, the trial transcript reveals that Johnson sought to elicit testimony from Michelle Thomas, a Sexual Assault Nurse Examiner who examined N. J. after her outcry. Johnson explained that he expected Thomas to testify that, during the exam, N. J. acknowledged to her that she was sexually active and had engaged in consensual sexual intercourse with two partners. Relying on *Tidwell v. State*, 306 Ga. App. 307, 311-312 (5) (701 SE2d 920) (2010), Johnson argued that the evidence was not rendered inadmissible by OCGA § 24-4-412 (2013),

Georgia's Rape Shield Statute,[3] because, he said, the evidence was relevant to something other than consent. According to Johnson, this consensual sexual activity could explain N. J.'s understanding of sexual activity and could be the cause for any possible psychological or physical injury allegedly resulting from the charged acts. While the trial court denied the motion, Johnson was ultimately allowed to elicit testimony from a different State's witness – namely, forensic interviewer Katalina Valdez – that N. J. had reported engaging in consensual sexual activity with one partner. The defense thereafter asserted during closing argument that N. J.'s knowledge "about sex and different positions of sex" could be attributed to her consensual sexual activity.

Now, in a meandering argument on appeal – that cites statutory provisions enacted after his trial and case law that has been overruled – Johnson argues that the trial court's exclusion of Thomas' testimony violated his Sixth Amendment rights to

---

[3] OCGA § 24-4-412 was enacted as part of Georgia's new Evidence Code, effective January 1, 2013. See *White v. State*, 305 Ga. 111, 116 (1) (823 SE2d 794) (2019). However, "OCGA § 24-4-412 was substantially revised by the General Assembly, effective April 18, 2019. See Ga. L. 2019, p. 81, §§ 5, 9. The revised version of the Rape Shield Statute applies 'to any motion made or hearing or trial commenced on or after the effective date of this Act' and thus is inapplicable in the present case. Ga. L. 2019, p. 81, § 8." *Torres v. State*, 353 Ga. App. 470, 478 n.3 (3) (838 SE2d 137) (2020).

confrontation and to present a meaningful defense.[4] However, nothing in the materials

before this Court suggest that Johnson raised these Sixth Amendment arguments until

his motion for new trial; accordingly, he is entitled to plain error review only. See

*Dunbar v. State*, 309 Ga. 252, 257 (3) (845 SE2d 607) (2020).

Though he does not address the plain error doctrine, Johnson is not entitled to

plain-error relief unless he shows, among other things, that "but for the evidence's

exclusion at trial, the outcome would have been more favorable to him." (Citation and

punctuation omitted.) *Williams v. State*, 302 Ga. 147, 152 (2) (805 SE2d 873) (2017).

As an initial matter, it is not at all clear that N. J.'s consensual sexual activity has

probative value sufficient to alter the outcome of the trial. While Johnson asserts that

Thomas' testimony was necessary to rebut "physical or psychological evidence of the

sexual abuse" offered by the State, there was, in fact, no physical evidence here, as

---

[4] Johnson makes no mention on appeal of the *Tidwell* decision which underpinned his argument below; it was overruled during the pendency of his motion for new trial. See *White*, 305 Ga. at 118-119 (2). Instead, Johnson relies, at least in part, on *Marion v. State*, 206 Ga. App. 159 (424 SE2d 838) (1992), and *Hall v. State*, 196 Ga. App. 523 (396 SE2d 271) (1990). However, two years before he filed his brief in this appeal, this Court recognized that *White* also overruled *Marion*, see *Torres*, 353 Ga. App. at 480 (3); further, while no Georgia court has expressly overruled *Hall,* the Rape Shield analysis in that case is also at odds with *White* and is likely no longer good law.

8

Johnson laments in his first enumeration.[5] Further, Johnson fails to explain how evidence of N. J.'s consensual sexual activity rebuts expert testimony adduced by the State that, at the time of her forensic interview, N. J. was exhibiting emotional symptoms consistent with sexual abuse. Also, while Johnson contends that N. J. fabricated these allegations to "remove [him] as an obstacle" to continue seeing the two boys in question, Johnson has failed to articulate why the sexual component of those relationships would have been necessary to develop such a theory.

Nevertheless, even if the evidence here is somehow sufficiently probative, the fact remains that trial counsel was eventually permitted to elicit testimony from Valdez about N. J.'s consensual sexual activity, and trial counsel relied on this testimony in closing argument to explain how N. J. was familiar with sexual intercourse. Johnson makes no showing that the outcome of his trial would have been different had the jury learned about N. J.'s second possible sexual partner or heard from a different witness. Accordingly, Johnson has failed to show plain error, and he is not entitled to relief. See *Martin v. State*, 306 Ga. 747, 749-750 (2) (833 SE2d 122) (2019) (no plain error where excluded evidence was merely cumulative).

---

[5] While Johnson argued below that the State planned to introduce evidence that N. J.'s hymen was transected, no such evidence was ever adduced.

4. Finally, Johnson also moved in limine to prohibit the State from eliciting testimony from N. J.'s cousin, Sharae Hawkins, about statements made by N. J. during her July 2015 outcry. Johnson argued that Hawkins' testimony could not be admitted as a prior consistent statement under OCGA § 24-6-613 (c) because, he said, he had made no allegation of recent fabrication by N. J. or improper influence; in short, Johnson claimed that Hawkins' testimony was nothing more than improper bolstering. In response, the State argued that N. J.'s outcry to Hawkins was admissible following Johnson's cross-examination of N. J., which highlighted the inconsistencies between her various statements and called her credibility into question. The trial court agreed with the State and allowed the testimony. Hawkins testified that, in July 2015, N. J. reported to her that she had been raped by Johnson, that it had occurred on more than one occasion, that she had described a specific mark on Johnson's "private area," and that N. J. was emotional during the disclosure. Now, on appeal, Johnson continues to argue that Hawkins' testimony was inadmissible. This enumeration fails.

As relevant to this appeal, OCGA § 24-6-613 (c) provides as follows:

A prior consistent statement shall be admissible to rehabilitate a witness
if the prior consistent statement logically rebuts an attack made on the

10

witness's credibility. . . . If a prior consistent statement is offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive, the prior consistent statement shall have been made before the alleged recent fabrication or improper influence or motive arose.

As the Georgia Supreme Court explained recently,

[w]hile the final sentence of the Code section effectively codifies our prior decisional law, the first two sentences expand the admissibility criteria to cover prior statements offered to rehabilitate a witness against *any* attack on a witness' credibility, other than [exceptions not relevant here], so long as the prior statement 'logically rebuts' that attack.

(Emphasis in original; citations omitted.) *McGarity v. State*, 311 Ga. 158, 165 (3) (856 SE2d 241) (2021).

Thus, contrary to Johnson's arguments below and on appeal, Hawkins' testimony is not inadmissible merely because Johnson did not, as he claims, "impugn[] [N. J.'s] credibility by charging her with recent fabrication or improper influence or motive." *Walters v. State*, 335 Ga. App. 12, 14 (780 SE2d 720) (2015). Instead, consistent with the plain language of OCGA § 24-6-613 (c) – and subject to exceptions not relevant here – the trial court was *also* authorized to consider whether Hawkins' testimony logically rebutted Johnson's attack on N. J.'s credibility; the

11

transcript reflects that the trial court did just this. Indeed, the trial court specifically concluded that Hawkins' testimony was admissible as a consequence of Johnson's cross-examination of N. J.

Notably, Johnson neither recognizes the myriad circumstances under which prior consistent statements are admissible under OCGA § 24-6-613 (c) nor addresses whether the trial court properly admitted Hawkins' testimony under the "logically rebuts" provision of the statute. In short, Johnson offers no meaningful challenge to the trial court's decision here. Nevertheless, the trial court's ruling is sound. The transcript supports the trial court's conclusion that Johnson's intense cross-examination of N. J. – which highlighted the inconsistencies in her various statements and questioned the veracity of her claims – constituted an attack on N. J.'s credibility; further, Hawkins' very limited testimony logically rebutted that attack. Accordingly, the trial court did not abuse its discretion in this regard, see *Martin v. State*, 360 Ga. App. 1, 9-10 (2) (860 SE2d 582) (2021), and Johnson is not entitled to relief.

*Judgment affirmed. Rickman, C. J., and Miller, P. J., concur.*