**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 19, 2024

# In the Court of Appeals of Georgia

A24A0375. WELLS v. THE STATE.

LAND, Judge.

After a jury trial, Timothy Wells was convicted of one count each of rape and giving false information to a law enforcement officer. He appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his rape conviction and that the trial court committed plain error by failing to grant a mistrial. For the following reasons, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether,

after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that when K. J. was twenty-five years old, she lived in a Laurens County trailer park with her German shepherd puppy. K. J. testified that during the evening of June 28, 2019, she was walking her dog when two men—an older man later identified as John Warren and a younger man later identified as Wells—that she did not know stopped their Ford Expedition, complimented her dog, and offered her a ride. K. J. accepted the ride. During the drive, K. J. chatted with Wells, but Warren kept interrupting and asking K. J. inappropriate questions and asking her to remove her clothing. K. J. refused.

The men then drove to an empty dirt road and parked. Because she was scared, K. J. got out of the car with her dog and tried to walk away. Warren followed K. J. out of the car, hit her so hard that she fell down screaming, and then hit her again on the face. When K. J. asked Warren if he was going to kill her, Warren responded that he "could." Warren then grabbed K. J. by the arm and tried to drag her to the car. K. J.

2

tried to fight him off and kicked him in the genitals. Warren hit K. J. again and demanded that she take off her clothes and get in the backseat of the Expedition. K. J. complied because she was "terrified." Warren tried to have sex with K. J., but was unable to maintain an erection. Warren got "mad," and told Wells that it was his turn and to "hurry up." Wells then had sex with K. J. in the backseat of the Expedition while "apologizing" to her. K. J. testified that she did not want to have sex with either man and that she complied with their demands because she was afraid. K. J. testified that she did not see any indication that Warren forced Wells to have sex with her or that he had a weapon. The men then got dressed and drove her back home to the trailer park. K. J. then took a shower and went to the hospital where a sexual assault exam and rape kit was performed.

The next day, Lauren's County Sheriff's Office Investigator Jeremy Reese was interviewing another sexual assault victim named J. R. at a different hospital. Reese conducted an initial interview and took photos of J. R. and her injuries. J. R. described being picked up and assaulted in a vehicle similar to Warren's Expedition J. R. told the investigator that she had taken a photo of the attacker with her phone. The photo was sent to the police station where officers identified the attacker as Warren. During this

investigation, Reese learned that K. J. was in another nearby hospital complaining of sexual assault under similar circumstances and he believed that the two incidents might be connected. When Reese brought Warren in for an interview, he revealed that defendant Wells was with him on the days that the assaults took place.

Investigator Reese then called Wells. When Wells answered the phone, he gave the officer a false name and stated that his name was "Butler." When officers went to interview Wells, he again identified himself as "Butler." During the interview with officers, Wells initially stated that he had been dropped off before the sexual assault against K. J. occurred. However, he later confessed that he did rape K. J., but "that he felt like he had to do it because he felt like Mr. Warren would have hurt them both" if he did not do so. Wells told the interviewing officers that Warren had a gun during the assault and he felt like he had to comply with his demands to avoid injury.

When asked whether Wells gave a reason for why he initially gave a false name to law enforcement, Reese responded that Wells told him that he lied because he "was wanted out of another jurisdiction." Wells then moved for a mistrial. The trial court denied the motion, but issued a curative instruction instructing the jury to disregard Reese's answer as being "totally unrelated to the case at hand" and that it "would be

improper [for the jury] to even consider that as part of your deliberations or evaluation of the case." Wells did not renew his motion for a mistrial.

Warren testified that he and Wells picked up a young woman with her dog in his Expedition with an offer to get her high, drove her to the river where they did drugs together, and then drove her home. When questioned further, Warren admitted that he hit K. J. when she tried to escape the car and that he saw Wells rape K. J. in the Expedition. Warren denied that he had a weapon on his body that evening and denied that he forced Wells to rape K. J. or threatened him if he failed to do so.

The jury convicted Wells of rape and of giving false information to a law enforcement officer. The trial court denied his motion for new trial.

1. Wells argues that the evidence presented at trial was insufficient to support his conviction for rape because the evidence showed that he committed the crime under duress and out of fear that Warren would hurt him if he failed to do so. We are unpersuaded.

When this Court reviews the sufficiency of the evidence, we do not "re-weigh the evidence or resolve conflicts in witness testimony but instead defer to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation

omitted.) *Tinson v. State*, 337 Ga. App. 83, 83 (1) (785 SE2d 914) (2016). This Court determines whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) Id. Here, there was evidence presented at trial that Wells raped K. J. when he had sexual intercourse with her forcibly and against her will. See OCGA § 16-6-1 (defining elements of rape). The determination of whether Wells's actions were justified by his explanation that he was forced to commit the rape by Warren was an issue of credibility that fell solely within the province of the jury. See *McIntosh v. State*, 247 Ga. App. 640, 641 (1) (545 SE2d 61) (2001) ("The credibility of witnesses and the weight given to the testimony are questions for the trier of fact") (punctuation and footnote omitted). Under the facts presented in this case, the jury could reasonably infer that Wells was not "justified" by raping K. J. because he felt threatened by Warren if he did not do so. See id.

2. Wells argues that the trial court committed plain error by not granting his motion for mistrial when Investigator Reese's testimony referred to unrelated criminal proceedings that Wells was facing in another jurisdiction. We are unpersuaded.

After Reese made the statement that Wells explained that he initially gave a false name because he was "wanted out of another jurisdiction," Wells made a motion for mistrial. The trial court denied the motion and gave a curative instruction telling the jury to disregard that statement. Wells did not make a second motion for mistrial and did not object to the curative instructions. "The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation omitted.) *State v. Hartsfield*, 294 Ga. 883, 885-886 (2) (757 SE2d 90) (2014). Moreover, it is settled law that "where a defendant objects and moves for mistrial and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with the action, he must renew the objection or motion." (Citation and punctuation omitted.) *Vazquez v. State*, 358 Ga. App. 261, 266 (2) (855 SE2d 15) (2021). In this case, Wells's counsel failed to renew his motion for mistrial or object to the trial court's curative instruction resulting in his waiver of appellate review of this argument. Id. at 266-267 (2).

Even if Wells had preserved this issue, we would find no basis for reversing the trial court's denial of the motion for mistrial. Here, the trial court's immediate

7

curative instruction and striking from the record the prosecutor's question and Reese's response preserved Well's right to a fair trial. See *Hartsfield,* 294 Ga. at 886 (2). Accordingly, the trial court did not abuse its discretion when it denied Wells's motion for a mistrial and Wells has failed to show plain error. See *McKibbins v. State*, 293 Ga. 843, 850 (3) (c) (750 SE2d 314) (2013) (no abuse of discretion in denial of a mistrial where the trial court sustained the objection and told the jury to disregard the statement); *Jackson v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013) (no abuse of discretion in denying a mistrial where trial court gave curative instructions following a reference to a prior drug arrest involving the accused).

*Judgment affirmed. Miller, P. J., and Markle, J., concur.*