**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 18, 2024**

# In the Court of Appeals of Georgia

A24A1381. PETERMAN v. THE STATE.

PADGETT, Judge.

Brian Peterman was found guilty of the offenses of rape, incest, child molestation and sexual battery of a child under the age of 16 following a jury trial. Following sentencing for those offenses, he appeals his convictions.[1] For the following reasons, we affirm.

Viewed in the light most favorable to the jury's guilty verdict,[2] the evidence produced at trial showed that Peterman is the biological father of N. G., a female. On the date of the offenses, N. G. was 15 years old. A few weeks prior to the date the

---

[1] Peterman was sentenced to a term of life plus 44 years in confinement followed by one year on probation as mandated by OCGA § 17-10-6.2.

[2] _Roundtree v. State_, 358 Ga. App. 140, 141 (854 SE2d 340) (2021).

offenses occurred, Peterman had begun living in the apartment shared by N. G., her mother, her siblings and her grandmother. In the early morning hours of September 1, 2019, N. G.'s mother was out of town and all of the apartment's other occupants were asleep except for N. G. and Peterman. Peterman began watching pornography on a mobile device and was showing the scenes to N. G., talking to her about sex. N. G. left the room to avoid waking the other occupants of the apartment and went into her mother's bedroom. At that point, Peterman also went into the bedroom where N. G. was located and began rubbing the child's breast. Peterman then took off his own clothes and removed the child's clothes.

Peterman then laid on top of N. G. and inserted his penis into the child's vagina, causing her pain. N. G. then got up and tried texting and calling her mother. Once she reached her mother, her mother told N. G. to go wake up her grandmother. N. G. told her grandmother what had just happened and, after locking the door to her bedroom, N. G.'s grandmother called police. Peterman began banging on the door to N. G.'s grandmother's room, demanding to know what was going on. N. G. hid in the closet until she ended up speaking with the dispatcher by telephone. Peterman called

N. G.'s mother and told her that he did not know what was going on. Police arrived and Peterman was arrested.

Upon the arrival of the police, they noticed that Peterman was partially undressed and there was a white powder spread all over the floor which smelled like carpet freshener. N. G.'s grandmother testified that the presence of the carpet freshener spread all over the apartment was strange because they did not even have carpet in their apartment. Crime scene technicians were called in and used a black light which suggested that there were bodily fluids of an unknown type within the area covered by the carpet freshener. N. G. was taken to the hospital where an examination was conducted and swabs were taken from the child. A forensic DNA analyst from the GBI testified that they were able to identify DNA profiles of at least two individuals from the vaginal swabs received for testing. One of the DNA profiles matched N. G., but the amount of DNA from N. G. masked their ability to make an absolute identification of the other contributor of DNA. However, they were able to determine that the other DNA profile was from a male and was a match for Peterman or anyone within the same paternal line as Peterman.

N. G. was later taken for a forensic interview where she largely recounted what had occurred, including that her father raped her and that he "nutted on the floor."

1. Peterman argues that the trial court committed plain error when it charged the jury:

> For the offense of incest, the State must prove that the defendant had sexual intercourse with someone he knew to be a relative. A relative, in this context, means someone the defendant was related to by blood or marriage in any one of the following ways: Father and child or stepchild.

Peterman acknowledges that he voiced no objections to the jury charges delivered by the court. Even in the absence of a contemporaneous objection, OCGA § 17-8-58 (b) affords Peterman the ability to argue plain error on appeal.

> An appellant seeking to establish plain error must make four showings: First, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

*Clark v. State*, 370 Ga. App. 430, 436-437 (2) (897 SE2d 645) (2024) (citation and punctuation omitted).

Peterman seems to conflate an objection he has to the language of the indictment with a purported error in the jury charge provided by the trial court.[3] OCGA § 16-6-22 (a) provides that "[a] person commits the offense of incest when such person engages in sexual intercourse or sodomy, as such term is defined in Code Section 16-6-2, with a person whom he or she knows he or she is related to by blood, by adoption, or by marriage as follows: (1) Father and child or stepchild...." The count of the indictment which charged Peterman with incest alleged that on the date in question, Peterman "did have unlawful sexual intercourse with [N. G.] who is accused's own daughter." That portion of the indictment did not allege the scienter requirement associated with incest - that Peterman knew that N. G. was his daughter. However, the charge delivered by the trial court *did* include all of the required elements, including the scienter requirement as set forth in OCGA § 16-6-22 (a). Peterman cannot establish that any error occurred in the jury charges delivered by the court and, because there was no error in the charge, it is axiomatic that he cannot meet

---

[3] Peterman raised no objection to the form or content of the indictment during the trial or at any time prior to trial.

the requirements associated with establishing plain error. This enumeration is meritless.

2. Peterman argues that the evidence presented was insufficient to support the convictions under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "When this Court reviews the sufficiency of the evidence, we do not re-weigh the evidence or resolve conflicts in witness testimony but instead defer to the jury's assessment of the weight and credibility of the evidence." *Wells v. State*, 371 Ga. App. 440, 442 (1) (900 SE2d 746) (2024) (citation and punctuation omitted). We review the evidence in a light most favorable to the prosecution and our sole question in this review is whether any rational trier of fact could have found the essential elements of the crimes to have been established beyond a reasonable doubt. *Tinson v. State*, 337 Ga. App. 83, 83 (1) (785 SE2d 914) (2016); *Drake v. State*, 363 Ga. App. 653, 655 (1) (872 SE2d 306) (2022). Specifically, Peterman argues that the State failed to prove that Peterman knew he was related to N. G. by blood or marriage, which is an essential element of the crime of incest.

N. G. testified that Peterman was her biological father. N. G.'s grandmother and great-aunt testified that Peterman was N. G.'s father. N. G.'s mother also

testified that Peterman was N. G.'s biological father. N. G.'s mother further testified that Peterman was not listed on N. G.'s birth certificate because he did not sign the birth certificate at the time of the child's birth. N. G.'s mother also testified that in addition to N. G., she has a second child who was fathered by Peterman.

Peterman argues that, because he is not married to N. G.'s mother, did not sign the child's birth certificate, and made no admission that he knew he was related to N. G., no rational trier of fact could have found him guilty of incest beyond a reasonable doubt. We disagree.

OCGA § 24-14-8 provides in relevant part that "[t]he testimony of a single witness is generally sufficient to establish a fact." In this case, four different witnesses testified that Peterman was N. G.'s biological father. See *Johnson v. State*, 195 Ga. App. 385, 387 (4) (393 SE2d 712) (1990) (unrebutted testimony that the defendant was married to the child's mother was sufficient to establish the relationship between the defendant and the child victim in a prosecution for incest); *Wynn v. State*, 322 Ga. App. 66, 68 (2) (744 SE2d 64) (2013). "Corroboration of the victim's testimony is not necessary to support a conviction for incest . . . ." *McNeal v. State*, 363 Ga. App. 417, 419 (1) (a) (867 SE2d 824) (2022) (citation and punctuation omitted).

There was no evidence introduced that called the testimony concerning N. G.'s parentage into question or which rebutted the testimony of the witnesses who affirmatively testified that Peterman was N. G.'s biological father. "At issue here is whether the evidence, viewed in the light most favorable to the jury's verdict, established the requisite familial relationship between the defendant and the victim. We conclude that it does." *King v. State*, 344 Ga. App. 244, 245 (1) (809 SE2d 824) (2018). Viewing the evidence and testimony presented at trial in the light most favorable to the verdict, the evidence was sufficient to support Peterman's conviction for incest.

3. Peterman next argues that the trial court erred in denying his motion for directed verdict as to the incest count. As noted previously, four different witnesses, N. G., her grandmother, her great-aunt, and her mother all testified that Peterman was N. G.'s biological father. That testimony was uncontradicted. Peterman argues that additional, stronger evidence as to his parentage of N. G. could have been admitted. "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." *Plez v. State*, 300 Ga. 505, 506 (1) (796 SE2d 704) (2017). Because there is no requirement that

testimony concerning paternity be corroborated in an incest case, there was sufficient evidence in the record as to Peterman's parentage of N. G., and the trial court did not commit error in denying Peterman's motion for directed verdict as to the incest count.

4. In his fourth and fifth enumerations of error, Peterman contends that the trial court erred in failing to merge the incest conviction with the conviction for rape and in failing to merge his convictions for child molestation and sexual battery with the conviction for rape. These arguments are all without merit.

Merger is codified in Georgia within OCGA § 16-1-7 (a), which states:

When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime. He may not, however, be convicted of more than one crime if:

(1) One crime is included in the other; or

(2) The crimes differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.

A crime is deemed to be included in another crime if "[i]t is established by proof of the same or less than all the facts . . . required to establish the commission of [the other crime]." OCGA § 16-1-6 (1).

9

While § 16-1-7 (a) is Georgia's codification of the doctrine of merger, the concept of merger is based in constitutional law. It provides that a criminal defendant, as a matter of substantive double jeopardy embodied within the Fifth Amendment, may not generally be convicted of multiple different crimes stemming from a single course of conduct. *Ray v. State*, 359 Ga. App. 637, 642 (3) (859 SE2d 793) (2021). However, if the crimes did not arise from a single course of conduct or if each of the crimes for which convictions were obtained have elements different from the other crimes for which convictions were obtained, the doctrine of merger does not apply.[4] See *Sillah v. State*, 315 Ga. 741, 758 (883 SE2d 756) (2023) (crimes not arising from the same conduct); *Drinkard v. Walker*, 281 Ga. 211, 217 (636 SE2d 530) (2006) (crimes containing different elements).

a. *Deliberate Interval*

By its terms, OCGA § 16-1-7 (a) applies only when examining whether crimes arise from "the same conduct of an accused." See *Johnson v. State*, 313 Ga. 155, 157 (3) (868 SE2d 226) (2022) ("[s]ubstantive double jeopardy law protects a defendant from multiple punishments when his crimes arise from the same conduct." (citing

---

[4] There are other occasions where merger might not apply which are not applicable to this case.

OCGA § 16-1-7 (a)). In determining whether different crimes arise from "the same conduct," if there is some interval of time between the acts which form the basis of the charged crimes, the crimes do not merge. See *Sillah*, 315 Ga. at 758.

> When examining whether separate counts merge, it is also relevant to determine if there has been a 'deliberate interval of time between the acts [charged.]' However, when conducting this analysis '[t]hat the interval is merely minutes or even seconds … cannot be a solely determinative factor.' However, the greater the interval of time between acts, the greater the likelihood the acts were separate offenses.

*Ray*, 359 Ga. App. at 642 (3) (citations and punctuation omitted). "If one crime is complete before the other takes place, the two crimes do not merge." *Gonzalez v. State*, 352 Ga. App. 83, 88 (3) (833 SE2d 727) (2019) (citations and punctuation omitted).

b. *Required Evidence Test*

If the crimes arising from the same conduct and for which convictions were ultimately obtained each have elements that are not present in the other crimes for which convictions were obtained, those offenses do not merge under the familiar "required evidence test" established in *Drinkard*, 281 Ga. at 217. "Evidence showing that the same conduct established the commission of two crimes does not necessarily

11

mean that those crimes merge." *Tinson,* 337 Ga. App. at 86 (2) (citation omitted). In considering whether crimes merge under the required evidence test, we consider "whether each statute requires proof of an additional fact that the other does not." Id.

    c. *Application to this Case*

Peterman first argues that the conviction for incest merged with the offense of rape. That argument is incorrect. As we held in *Tinson*

> [Peterman's] rape and incest convictions do not merge because each crime requires proof of an additional fact that the other does not. To establish the crime of rape, the State had to prove that [Peterman] lacked consent, which is not an element of incest. To establish the crime of incest, the State had to prove that the victim was of a certain relation to [Peterman], which is not an element of rape.

Id.; *Drinkard*, 281 Ga. at 213-217 (incest not established by the same or less than all of the facts required to establish the crime of rape); *Dew v. State*, 292 Ga. App. 631, 634-635 (3) (665 SE2d 715) (2008) (same).

Peterman next argues that the trial court erred in failing to merge count three (child molestation) and count four (sexual battery) with count one (rape). A proper review of these two merger arguments requires us to consider them separately.

12

In count three of the indictment, Peterman was charged with the offense of child molestation in that Peterman "did unlawfully commit an immoral and indecent act to, with and in the presence of [N. G.], a child under the age of sixteen (16) years, by viewing pornography with her, with the intent to arouse and satisfy [Peterman's] sexual desires." During trial, N. G. testified that Peterman was watching pornography on a phone and that he showed her the pornography in one room prior to coming into a different room and beginning the sexual assault by rubbing her breast. The State charged Peterman with the offense of child molestation based upon Peterman showing the child pornographic images. He showed the child pornography in one room, and she then left that room and returned to the bedroom where she had been previously. After an identifiable period of time of unknown duration passed, Peterman came into the bedroom and began touching her in a sexual manner. The acts which constituted the charge of child molestation were completed before those which constituted the charge of rape took place. Accordingly, these crimes do not merge. See *Gonzalez*, 352 Ga. App. at 88 (3).

In count four of the indictment, Peterman was charged with sexual battery of a child under the age of 16 years. The indictment alleged that Peterman "did

intentionally make physical contact with the breast of the body of NG, a child under the age of 16 years, without her consent." Under the required evidence test, the offense of rape required proof that Peterman had carnal knowledge of a female forcibly and against her will. OCGA § 16-6-1 (a). "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." Id. Under OCGA § 16-6-22.1, the offense of sexual battery required proof that Peterman "intentionally [made] physical contact with the intimate parts of the body of another person without the consent of that person." The statutory definition of the term "intimate parts" includes the breasts of a female. OCGA § 16-6-22.1 (a). Rape requires proof of a fact, carnal knowledge, that sexual battery does not. As indicted in this case, sexual battery requires proof of a fact, that Peterman intentionally touched the breasts of the victim, that rape does not. Additionally, the State charged Peterman under OCGA § 16-6-22.1 (d) which requires proof that the victim was also under the age of 16 at the time of the battery, a fact which is not required to be proven to establish the offense of rape. Therefore, under the required evidence test, these offenses do not merge under the facts of this case.[5]

---

[5] The offenses of child molestation and sexual battery also would not merge with each other under the required evidence test. *Quantanilla-Solis v. State*, 367 Ga. App.

14

5. In his final enumeration of error, Peterman argues that the trial court erred in permitting the State to introduce what he categorizes as "inadmissible victim impact evidence" during the trial. During the trial, different witnesses testified that after being sexually assaulted by Peterman, N. G.'s health, attitude and demeanor all changed in a negative way. N. G. testified that since the attack, she has attempted suicide.

OCGA § 24-1-103 generally requires a contemporaneous objection to any evidence presented that would be subject to an objection. Peterman acknowledges that he made no contemporaneous objection to any evidence admitted during the trial relating to the impact that his crimes have had on N. G. Additionally, Peterman did not raise this issue in his motion for new trial, as amended. Therefore, Peterman requests that we review the testimony that he identified as victim impact evidence under a plain error analysis as authorized under OCGA § 24-1-103 (d).

Under a plain error analysis, Peterman bears the burden of showing that the alleged error likely affected the outcome of the proceedings. *Tucker v. State*, 362 Ga.

397, 406 (5) (a) (885 SE2d 323) (2023).

App. 489, 494 (1) n.4 (869 SE2d 142) (2022); *Bozzie v. State*, 302 Ga. 704, 708 (2) (a) (808 SE2d 671) (2017).

> Under Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial. This is because 'background information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase.'

*Walker v. State*, 360 Ga. App. 211, 217 (4) (860 SE2d 868) (2021) (citation and punctuation omitted). The State correctly notes that in other cases, expert witnesses have been allowed to testify about post-event physical and emotional manifestations exhibited by victims of sexual assault, particularly where those victims are children. See *Odom v. State*, 243 Ga. App. 227, 227-228 (1) (531 SE2d 207) (2000). However, there was no expert on child sexual abuse who testified in this case. There was a witness qualified as an expert in forensic interviews of children, but the State did not seek to qualify her or any other witness as an expert in child psychology, child sexual abuse, or in any other field that would have authorized the admission of evidence

relating to the post-event manifestations exhibited by N. G. Therefore, we conclude that the witnesses should not have been asked about those matters when they testified.

However, the fact that inadmissible evidence was admitted does not end this analysis. Because no contemporaneous objection was made, we are left only with a plain error analysis. "To establish plain error, an appellant must identify an error that was not affirmatively waived, was clear and not open to reasonable dispute, likely affected the outcome of the proceeding, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Tucker*, 362 Ga. App. at 493-494 (1) (citations and punctuation omitted). "Satisfying all four prongs of this standard is difficult, as it should be." Id. at 494 (1) (citation and punctuation omitted). The failure to satisfy any of the four prongs "dooms a plain error claim." *Smith v. State*, 313 Ga. 584, 587 (872 SE2d 262) (2022) (citation and punctuation omitted).

In this case, Peterman has not met his burden of showing that the testimony likely affected the outcome of his trial. Notably, N. G. testified to the facts of the crimes and the jury had the opportunity to assess her credibility during that testimony. The jury also had the benefit of her forensic interview which occurred in September 2019. The jury was made aware of N. G.'s immediate outcry, the physical evidence

which was obtained, and the results of the forensic testing that was performed. When viewed in context with the totality of the evidence, there is no likelihood that the challenged testimony affected the outcome of Peterman's trial which is, of course, fatal to his plain error claim. Peterman has not met his burden of establishing that the error probably did affect the outcome below, rendering his final enumeration of error meritless. See *Whipkey v. State*, 367 Ga. App. 73, 78 (1) (885 SE2d 57) (2023).

*Judgment affirmed. Dillard, P. J., and Brown, J., concur.*