NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the

# Supreme Court of Georgia

No. S26A0953
Joseph Tabb
v.
The State

On Appeal from the Superior Court of Fulton County
No. 19SC168889

Decided: June 2, 2026

PETERSON, Chief Justice.

Joseph Tabb appeals his convictions for malice murder and other offenses related to the shooting death of Ryan Robinson.[1] On appeal, Tabb argues that the evidence was insufficient to support his murder conviction, that the trial court abused its

---

[1] Robinson was found dead on the night of January 31, 2019. In June 2019, a Fulton County grand jury returned an indictment charging Tabb with malice murder (Count 1), three counts of felony murder (Counts 2–4), armed robbery (Count 5), aggravated assault with a deadly weapon (Count 6), possession of a firearm during the commission of a felony (Count 7), and possession of a firearm by a convicted felon (Count 8). The State nolle prossed Counts 4 and 8 before trial, and at a trial held in June and July 2022, the jury found Tabb guilty of all remaining charges. The trial court sentenced Tabb to serve life in prison without the possibility of parole on Count 1, a consecutive life sentence on Count 5, and a consecutive five-year sentence on Count 7. The remaining counts were either vacated by operation of law or merged for sentencing purposes. In July 2022, Tabb timely filed a motion for new trial, which he amended in October 2025, and the trial court denied it in January 2026, following a hearing. Tabb timely filed a notice of appeal, and his appeal was docketed to this Court's April 2026 term and submitted for a decision on the briefs.

discretion by requiring him to be shackled during trial, and that his trial counsel was ineffective. We affirm because the trial evidence was sufficient to support the convictions, the improper-restraint claim was not preserved for appellate review, and Tabb failed to demonstrate that trial counsel was constitutionally ineffective.

Viewed in the light most favorable to the jury's verdicts, the trial evidence showed the following. Robinson frequently gave rides to people in exchange for money. On January 27, 2019, Kiona Woody contacted Robinson through Facebook to coordinate a ride for Tabb, whom she was dating at the time. Woody testified that she frequently saw Tabb with a gun and took several pictures of him in which he had a gun on him.

In the January 27 messages, Woody asked Robinson to pick up Tabb from Henry's Pack-a-Sack and drop him off at her residence. She indicated that Tabb would be wearing green pants, a black jacket, and "Polo boots." Video footage from the surveillance system at Henry's Pack-a-Sack showed a man wearing green pants, a jacket, and boots get into Robinson's car on January 27, and Robinson's car departing the parking lot soon thereafter. Woody confirmed that Robinson drove Tabb to her residence on January 27.

On January 31, Robinson drove Zakiyah McCoy and some of her friends to a club. McCoy and her friends left their bags in Robinson's car because he was supposed to pick them up later. Robinson and McCoy exchanged messages after he dropped her off. Robinson sent his last message at 11:08 p.m., and he did not respond to McCoy's other texts or come back for her as planned.

Around the time that Robinson was driving McCoy and her friends to the club, Woody contacted Robinson to arrange another ride for Tabb to her residence. Robinson was scheduled to pick up

Tabb around 10:50 p.m. and was initially directed to meet Tabb at Henry's Pack-a-Sack. But at Tabb's request, Woody directed Robinson to meet Tabb at the "Orange Store," which was near Henry's Pack-a-Sack. Woody last communicated with Robinson around 11:10 p.m., asking if he had located Tabb. When Tabb did not arrive at her residence, Woody texted Robinson, but he did not reply.

Sometime before midnight, Robinson was found dead in his car in a driveway behind an abandoned apartment complex, located approximately 0.2 miles from the Orange Store. When police arrived at the crime scene, Robinson was still buckled into the driver's seat, the car was turned off, and the keys were missing. Police found some of Robinson's personal items, including his driver's license, but found no cell phone. Police observed that Robinson was shot several times, and an autopsy revealed that he had seven gunshot wounds and died from wounds to his torso and right arm.

Police recovered seven shell casings from around the car and noticed a bullet hole in the driver's side door and damage to the passenger side headrest that indicated that a gun was fired from the rear passenger side toward Robinson. Four bullets were recovered from Robinson's torso during the autopsy.

A couple days after the shooting, Tabb arrived at Woody's residence, stating that he had killed Robinson.[2] Tabb later elaborated to Woody, explaining that he robbed Robinson of $25, and that he killed Robinson because he "knew my name." Tabb's cell phone records showed that his cell phone was around the area

---

[2] Police talked to Woody several times after the crime, but she initially did not tell police about Tabb's admission. She did not report Tabb's admission to police until December 2021.

of the crime scene during the time of the shooting.

A firearms expert testified that the recovered casings were consistent with being fired by a Smith & Wesson 9mm pistol, and that the bullets recovered from Robinson's torso were likely all fired from the same firearm, which could have been a Smith & Wesson 9mm pistol.[3]

Tabb was later arrested, and during a custodial interview in which he was read his *Miranda[4]* rights, Tabb denied knowing Woody, denied that she ever arranged rides for him, denied ever being in Robinson's car, and denied being in any photographs taken by Woody. The investigator testified that the gun shown in some of those photographs appeared to match the characteristics of a Smith & Wesson 9mm firearm.

1. *The evidence was sufficient to support Tabb's convictions.*

Tabb argues that the evidence was insufficient to establish his murder conviction, because, among other things, the State failed to prove that Tabb caused Robinson's death, there was no physical or forensic evidence tying Tabb to the murder, and no eyewitnesses placed him at the scene of the crime. He argues that the evidence against him was entirely circumstantial and merely created a suspicion of guilt, which was insufficient to convict him. We disagree.

When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence presented in the light most favorable to the verdicts and ask whether a rational

---

[3] Although McCoy had left her gun (a 9mm firearm) in Robinson's car, and it was never recovered, the gun was ruled out as a possible murder weapon.

[4] *Miranda v. Arizona*, 384 US 436 (1966).

trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 US 307, 319 (1979). Questions about the weight and credibility of evidence, the inferences to be drawn from it, and the resolution of any conflicts or inconsistencies in the evidence are left to the jury. See *Anderson v. State*, 319 Ga. 56, 59 (2024). "Due process allows for a conviction to rest on circumstantial evidence alone, but under Georgia statutory law, a conviction that rests only on circumstantial evidence cannot stand unless the evidence 'excludes every other reasonable hypothesis save that of the guilt of the accused.'" *Lee v. State*, 322 Ga. 44, 56 (2025) (quoting OCGA § 24-14-6; punctuation omitted). "Whether an alternative hypothesis is reasonable, and whether the circumstantial evidence excludes any such hypotheses, are questions for the jury, and we will not disturb the jury's findings unless they are insupportable as a matter of law." Id. at 56–57 (cleaned up).

Here, the evidence was constitutionally sufficient. As a preliminary matter, Tabb told his former girlfriend, Woody, that he shot and killed Robinson. Tabb's statement is direct evidence of guilt, defeating his claim that the case was entirely circumstantial. See *Green v. State*, 322 Ga. 617, 620–21 (2025) (a case is not entirely circumstantial under OCGA § 24-14-6 if the trial evidence includes a defendant's admissions, which constitute direct evidence of guilt). And although Tabb challenges Woody's testimony, her credibility and the weight to be given to her testimony was a matter for the jury to determine. See *Anderson*, 319 Ga. 59.

To the extent Tabb's statement constituted a confession as opposed to a mere incriminating admission, it needed to be corroborated. See *Moss v. State*, 322 Ga. 757, 760 (2025) (a confession is an admission to committing the entire criminal act

5

with no facts to mitigate or justify the act, and confessions need to be corroborated under OCGA § 24-8-823). See also *Hood v. State*, 311 Ga. 855, 858–59, 866 (2021) (defendant's statements to witnesses that he killed the victims, without adding any facts to mitigate or justify the act, were confessions requiring corroboration). But "no specific manner of corroboration of the confession is required, and corroboration in any particular is sufficient." *Hooper v. State*, 313 Ga. 451, 455–56 (2022) (quotation marks omitted).

Here, Tabb's statement was sufficiently corroborated. Woody testified that on the night of Robinson's death, Tabb had asked her to have Robinson pick him up from Henry's Pack-a-Sack and then changed the requested location to the Orange Store, which was nearby. Henry's Pack-a-Sack was the location where Robinson had picked up Tabb a few days earlier, as testified to by Woody and confirmed by surveillance footage from the store. Cell phone tower evidence placed his phone at the scene of the crime, and evidence showed that Robinson stopped communicating with Woody and McCoy at the time he was scheduled to pick up Tabb. Additionally, Robinson was shot by a weapon that was consistent with one that Tabb was previously photographed carrying. This evidence was sufficient to corroborate Tabb's statement, and the evidence as a whole was sufficient to support Tabb's convictions.

2. *Tabb failed to preserve his claim that the trial court abused its discretion in requiring him to be visibly shackled.*

Tabb argues that the trial court abused its discretion in requiring him to be visibly shackled during his trial, because the trial court failed to balance the need for security measures with protection of Tabb's constitutional rights and failed to consider

6

alternative security measures. The record shows that Tabb did not object to the shackling at trial and therefore did not preserve this issue for review. See *Munn v. State*, 313 Ga. 716, 723–24 (2022). See also *Brooks v. State*, 309 Ga. 630, 638 (2020) (noting limited types of unpreserved claims that are subject to plain error review and holding that this Court has not extended plain error analysis to other claims of error in the absence of a specific legislative provision).

3. *Tabb has failed to demonstrate that trial counsel was ineffective on any of the grounds he alleges.*

Tabb argues that trial counsel was ineffective on several grounds. None of these grounds have merit.

To prevail on any of his claims, Tabb must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 US 668, 687 (1984). To establish deficient performance, Tabb must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2019) (quotation marks omitted). Our review of counsel's performance applies an objective reasonableness standard, and is not limited to any subjective reasons offered by counsel for her conduct. See *Lane v. State*, 312 Ga. 619, 623 (2021). To demonstrate prejudice, Tabb must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mims*, 304 Ga. at 855 (quotation marks omitted). The failure to meet either of the prongs is fatal to an ineffectiveness claim. See *Smith v. State*, 296 Ga. 731, 733

7

(2015). In considering an ineffectiveness claim, we review a trial court's factual findings for clear error and its legal conclusions de novo. *Lawrence v. State*, 286 Ga. 533, 534 (2010).

(a) *Trial counsel was not deficient for failing to object to or mitigate victim-impact statements.*

Tabb argues that trial counsel was ineffective for failing to object to testimony from Robinson's mother that constituted improper victim-impact testimony, because evidence about the emotional impact of the crime on the victim's family is generally inadmissible, as it is generally not relevant to the issues in the guilt/innocence phase of a trial and is likely to engender the jury's sympathies. See *Lofton v. State*, 309 Ga. 349, 363 (2020); *Lucas v. State*, 274 Ga. 640, 643 (2001). Trial counsel was not deficient.

After Robinson's mother testified about Robinson's work, including that he earned money by driving people, the prosecutor asked her how her life had changed since Robinson's death. Robinson's mother responded:

It's a struggle. It has been a nightmare. I lost myself. I lost possessions. I can't maintain a regular job anymore. I just miss his smile, his conversation.

At the motion for new trial hearing, trial counsel testified that she was aware that it was improper to admit victim-impact testimony but decided not to object to the mother's testimony because she did not believe it was necessary. Trial counsel believed that interrupting the testimony of the mother, who was crying, would have a negative effect on the jury, as the jury seemed to connect with her.

Although Robinson's mother's testimony may have been inadmissible, it was brief, and trial counsel's reasons for not

8

objecting are objectively reasonable. Accordingly, this claim fails. See *Cox v. State*, 306 Ga. 736, 743 (2019) (trial counsel's decision not to object to the State's victim-impact argument was reasonable where the argument was brief and counsel did not want to "draw more attention" to it). See also *Moon v. State*, 288 Ga. 508, 516 (2011) ("the making of objections falls within the realm of trial tactics and strategy and thus usually provides no basis for reversal of a conviction" (citation and punctuation omitted)).

(b) *Trial counsel was not deficient for failing to object to the admission of an in-life photograph of Robinson.*

Tabb argues that trial counsel was also ineffective for failing to object when the State moved to admit a photograph of Robinson during his mother's testimony. We disagree.

The photograph at issue was a neutral, in-life photograph of Robinson alone. The mother's testimony about the photograph was brief, and the trial transcript does not indicate that she was excessively emotional in identifying Robinson.

Tabb acknowledges that an in-life photograph may be relevant but argues that trial counsel's lack of objection to the photo or effort to reduce its prejudicial impact amounted to deficient performance. In support of his argument, Tabb cites *Boyd v. State*, 284 Ga. 46, 48 (2008), for the point that "every effort should be made to proffer a photograph of the victim alone." But the State did proffer a photograph of Robinson alone. Tabb also relies on *Ragan v. State*, 299 Ga. 828 (2016), for the proposition that the State should have sought to admit the photograph through someone other than the victim's mother. In *Ragan*, we noted case law describing a "better practice" to admit a photograph through "nonrelated witnesses," and concluded that

9

the court erred in admitting five photographs of the victim, including some with the victim's children, through the testimony of the surviving spouse, because the photographs had a "cumulative prejudicial effect" and scant probative value. Id. at 833.

But the "better practice" noted in *Ragan* did not establish a categorical rule that a victim's relative can never identify an in-life photograph of the victim. Indeed, in a case involving circumstances similar to those in this case, we distinguished *Ragan* and concluded that a trial court did not abuse its discretion in allowing the victim's mother to identify a single photograph of the victim, alone in a neutral background, where the mother did not have a strong emotional reaction during her identification testimony. See *Lofton*, 309 Ga. at 355–56. Because there was only a single, neutral photograph of the victim alone here, just like in *Lofton*, Tabb has not demonstrated that the photograph of Robinson was inadmissible. As a result, he has failed to show that trial counsel's failure to object to its admission was deficient. See *Watson v. State*, 303 Ga. 758, 762–63 (2018) (counsel is not deficient for failing to make a meritless objection).

(c) *Trial counsel was not deficient for failing to object to a detective's testimony regarding cell tower location data.*

Tabb argues that trial counsel was ineffective for failing to object to Detective Gordon Payne's testimony about cell tower data—evidence that placed Tabb near the scene of the crime around the time of the murder—because Detective Payne was never qualified as an expert. Tabb's claim fails.

On direct examination, Detective Payne testified that he requested the cell phone records for the phone number Tabb was known to use, and that the tower data he obtained showed Tabb

was around the crime scene during the time of the murder. He did not testify about the underlying science or technology used to make this determination. Although Detective Payne testified that "every cell phone tower is broken into three sides, what's called three azimuths," he later clarified that the basis of this knowledge was from reviewing the cell phone data record.

At the motion for new trial hearing, trial counsel said she did not object to Detective Payne's testimony on direct because he was not testifying as an expert and was instead referring to what the data showed him. Trial counsel contrasted this with a situation in which a person would testify as to how the cell tower technology worked.

Trial counsel's evaluation that Detective Payne's testimony on direct examination did not constitute expert testimony was objectively reasonable and, therefore, she was not deficient for failing to object to it. See *Shells v. State*, 323 Ga. 527, 540–41 (2026) (police analyst's testimony about the location of the defendants' cell phones during the timeframe of the crimes was admissible as lay witness testimony where analyst was not testifying about the underlying science of cell phone location data and was instead plotting points based on cell phone records). See also *Moody v. State*, 316 Ga. 490, 531 (2023) (nurse's testimony that based on her experience defendant did not appear to be mentally deficient was admissible as lay evidence under Rule 701); *Pritchett v. State*, 314 Ga. 767, 781–84 (2022) (investigator's testimony that holes he observed could have been consistent with .40-caliber projectile and that blood drops indicated certain information about how the crime was committed was admissible as lay evidence under Rule 701 based on investigator's prior professional experience).

Tabb argued below that trial counsel's own questions to

11

Detective Payne concerned matters that "only an expert would know," and the trial transcript shows that trial counsel elicited testimony from Detective Payne about how cell phone tower technology worked. But Tabb does not argue on appeal that trial counsel was ineffective in *her cross-examination* of Detective Payne, instead arguing only that trial counsel was ineffective for failing to *object* to Detective Payne's testimony. Therefore, this claim fails.

(d) *Trial counsel was not deficient for failing to object to the visible shackling of Tabb.*

Tabb argues that trial counsel was ineffective for failing to object to the trial court's order that Tabb be shackled during his trial. This claim fails.

Prior to trial, the trial court questioned Tabb and trial counsel as to their interactions, and trial counsel said that Tabb was combative and used profanity. When asked, Tabb said he did not know whether he could be calm and cooperative during his trial. The trial court recounted that it had received several reports that Tabb was combative in jail, including allegations that he attempted to start fires, and received a report that Tabb had planned to "buck-up" during trial, which the trial court took to mean that he would be combative, belligerent, and disruptive. When asked again if he could be calm and cooperative, Tabb was unresponsive. Based on this exchange, the court determined that Tabb would remain shackled until there was some other security device that could be placed on Tabb in order "to ensure the safety of everyone involved."

The trial court did not specifically say at that point what security device was used, but later (after jury selection was completed) clarified that Tabb's hands were shackled and he had

12

a leg "brace" on. The trial court also noted that Tabb had become combative when deputies tried to put the leg brace on and repeated that its decision to shackle Tabb was based on his combative history that involved over 30 behavioral incidents in jail, including aggravated assault on inmates and arson. The trial court later instructed the jury that the use of restraints had no bearing on Tabb's guilt or innocence and should not be considered during its deliberations.

We have previously stated that "no person should be tried while shackled except as a last resort." *Hill v. State*, 308 Ga. 638, 644 (2020) (cleaned up). "A trial judge has the discretion to take account of special circumstances, including security concerns, that may call for shackling, but any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial." Id. (quotation marks omitted). The trial court's decision to shackle a defendant must "be subjected to close judicial scrutiny to determine if there was an essential state interest furthered by compelling a defendant to wear shackles and whether less restrictive, less prejudicial methods of restraint were considered or could have been employed." Id. (quotation marks omitted). "While this Court is deferential to the security determinations of a trial court, the record must provide a basis for those determinations." Id.

Here, the record shows that Tabb was shackled due to particular, case-specific security concerns. The trial court listed many of those reasons on the record, namely that Tabb exhibited combative and violent behavior throughout his incarceration and had indicated that he planned to be combative at trial. Tabb does not challenge any of these grounds showing that he posed a security risk. Instead, he argues that the trial court should have

13

considered less restrictive means and trial counsel should have objected when the court did not. But the record shows that the trial court said Tabb would remain shackled until some other security device could be found that would still "ensure the safety of everyone involved."

Trial counsel testified at the motion for new trial hearing that Tabb was a safety concern because of his aggressive behaviors, including those she witnessed personally, and that the trial court handled the situation "appropriately." She stated that she did not object to any of the court's procedures because she believed it was a necessary safety precaution. Because it was not objectively unreasonable to view Tabb's restraints as a "last resort," trial counsel's failure to object was not objectively unreasonable. Therefore, Tabb's claim fails.

4. *Tabb was not entitled to a new trial based on cumulative prejudice.*

Tabb argues that he was entitled to a new trial based on the cumulative prejudice resulting from the trial court errors and ineffective assistance of counsel alleged above. See *State v. Lane*, 308 Ga. 10, 14 (2020) (courts are to "consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues"). But there is not a single error in this case, so the cumulative prejudice analysis does not apply. See *Thomas v. State*, 311 Ga. 573, 579 (2021).

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*